WILLIAM JAMESON & CO., Inc., v.
MORGENTHAU, Secretary of the
Treasury, et al.
No. 440.

District Court of the United States for the
District of Columbia.
Dec. 22, 1938.

772

John F. Moore, of Washington, D. C. (Debevoise, Stevenson, Plimpton & Page, of New York City, of counsel), for plaintiff.

David A. Pine, U. S. Atty., of Washington, D. C., Thurman W. Arnold, Asst. Atty. Gen., Berkeley W. Henderson, Sp. Asst. to Atty. Gen., and John Paulding Brown, Atty. Federal Alcohol Administration, of Washington, D. C., for defendants.

Before VINSON, Associate Justice, United States Court of Appeals for the District of Columbia, and WHEAT, Chief Justice, and ADKINS, Justice, District Court of the United States for the District of Columbia.

ADKINS, Justice.

Plaintiff William Jameson & Company, Inc., a Delaware corporation, is engaged in the business of importing whiskey into the United States and of selling the same in interstate commerce.

In June, 1938 plaintiff having imported from Scotland five cases of whiskey labeled "Sandy Ross Brand Blended Scotch Whiskey" made demand on the Collector of Customs at New York City for the release of said whiskey; two certificates of age and origin accompanying the request and signed by an officer of Customs and Excise of the British Government stated that the spirits involved were 50% Scotch whiskey and 50% Northern Irish whiskey.

By direction of defendant Wilford S. Alexander, Administrator of the Federal Alcohol Administration, the Collector of Customs refused to release the whiskey on the ground that it was improperly labeled Scotch whiskey.

This suit is filed to restrain defendants from refusing to release the whiskey.

From the complaint it appears that the Sandy Ross whiskey is a blend of equal parts of grain spirits distilled in Northern Ireland and of Scotch whiskey distilled in Scotland from malted barley, the blending being done in Scotland.

Defendants contend that the name "Scotch Whiskey" is applicable only to whiskey all of which has been distilled in Scotland. Plaintiff asserts that the expression "blended Scotch whiskey" means only that it shall be composed in part of whiskey distilled in Scotland from malted barley, and that the grain spirits used as a diluent may be distilled in Ireland, England, or Wales.

Defendants contend that their position is in accord with the Federal Alcohol Administration Act, 27 U.S.C.A. §§ 201–211, and with Regulations No. 5 promulgated thereunder by the Administrator with the approval of the Secretary of the Treasury.

The Federal Alcohol Administration Act (approved August 29, 1935; 49 Stats. 977; amended June 26, 1936, 49 Stats. 1965, 27 U.S.C.A. § 205(e), authorizes in Section 5 (e) the Administrator to make regulations " * * * requiring, at time of release from customs custody, certificates issued by foreign governments covering origin, age, and identity of imported products: * * *".

Section 46 (a) of Regulations No. 5 relating to labeling and advertising of distilled spirits provides that Scotch whiskey, whether blended or unblended, shall not be released from customs custody for consumption unless accompanied by a certificate issued by a duly authorized official of the British Government certifying that the particular spirits are Scotch and have been manufactured in compliance with the laws of the government regulating the manufacture of whiskey for home consumption.

The officials of the Custom and Excise Office of Great Britain, in issuing such certificates, require that all the spirits contained in whiskey to be certified as Scotch whiskey shall be distilled in Scotland.

Plaintiff contends that the Regulation is invalid because it exceeds the authority conferred by the statute, and also because it delegates to a foreign government the determination of what is Scotch whiskey; that the effect of the Regulation is to deprive plaintiff of its lawful right to import into the United States the whiskey here involved as Scotch whiskey, and thereby to deprive plaintiff of its property without due process of law.

Plaintiff further contends that the 21st Amendment to the Constitution, U.S.C.A. Const. Amend. 21, transfers to the states all power with respect to alcoholic liquors, including foreign and interstate commerce therein, and that therefore the Federal Alcohol Administration Act is beyond the powers of Congress and unconstitutional.

This case is heard upon plaintiff's application for a preliminary injunction to restrain the enforcement of the Federal Alcohol Administration Act and Regulations No. 5 thereunder; and also upon defendants' motion to dismiss the complaint.

1. The Constitutional Questions.

a. The 21st Amendment does not deprive Congress of all power to regulate foreign and interstate commerce in intoxicating liquors.

The 21st Amendment to the Constitution provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited".

In support of their contention that this amendment transfers from Congress to the states all control over foreign and interstate commerce in intoxicating liquors plaintiff's counsel rely on State Board of Equalization of California v. Young's Market Company, 299 U.S. 59, 57 S.Ct. 77, 81 L. Ed. 38 and Mahoney v. Joseph Triner Corporation, 304 U.S. 401, 58 S.Ct. 952, 82 L. Ed. 1424.

In State Board of Equalization of California v. Young's Market Company, 299 U. S. 59, 57 S.Ct. 77, 81 L.Ed. 38, a state statute imposing a license fee for the privilege of importing beer into California was sustained as a valid exercise of the state's authority under the 21st Amendment. It was held that a classification recognized by the 21st Amendment could not be deemed void under the equal protection clause of the 14th Amendment, U.S.C.A.Const. Amend. 14.

This conclusion was followed in Mahoney v. Joseph Triner Corp. 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424. There a Minnesota statute provided that no licensed manufacturer or wholesaler should import any brand of intoxicating liquors containing more than 25% of alcohol by volume and ready for sale without further processing, unless such brand was registered in the Patent Office. While this might result in a discrimination in favor of liquor processed within Minnesota, the statute was held to be within the power given to the state by the 21st Amendment.

■ We are of opinion that these cases do not support plaintiff's contention, and that the Amendment does not destroy the power of Congress to regulate foreign and interstate commerce in intoxicating liquors, but that such power continues except as modified by the Amendment.

b. As a condition of permitting the importation of distilled spirits as Scotch whiskey, Congress may require the importer to produce certificates issued by the British Government that in fact such whiskey is Scotch whiskey.

■ The power to regulate commerce extends to the prohibition of shipments in such commerce. United States v. Carolene Products Co., 304 U.S. 144, 147, 58 S.Ct.

778, 82 L.Ed. 1234; Lottery Case, Champion v. Ames, 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492.

In Buttfield v. Stranahan, 192 U.S. 470, 493, 24 S.Ct. 349, 354, 48 L.Ed. 525, in holding that Congress could forbid the importation of teas which were not equal to certain standards, it was said: " * * * no individual has a vested right to trade with foreign nations, which is so broad in character as to limit and restrict the power of Congress to determine what articles of merchandise may be imported into this country *and the terms upon which a right to import may* be exercised". (Italics supplied)

■ It follows that Congress has the constitutional right to impose the condition that whiskey may be imported into this country only upon the production of evidence of a specified kind establishing the identity of such whiskey.

■ c. While we decide against plaintiff on the Constitutional questions, we think the complaint does attempt to restrain the enforcement of an act of Congress on the ground that the act, as well as the Regulations thereunder are repugnant to the Constitution. We conclude that the hearing is properly held by a three-Judge-court under the provision of Section 3 of the Act of August 24, 1937, 50 Stats. 752, 28 U.S.C.A. § 380a.

## 2. The Regulations Are Within the Framework of the Statute.

In Panama Refining Co. v. Ryan, 293 U. S. 388, 389, 55 S.Ct. 241, 79 L.Ed. 446, the Supreme Court—with respect to the power of Congress to authorize executive officers to make regulations—said: "So also, from the beginning of the government, the Congress has conferred upon executive officers the power to make regulations—'not for the government of their departments, but for administering the laws which did govern.' United States v. Grimaud, 220 U.S. 506, 517, 31 S.Ct. 480, 55 L.Ed. 563. Such regulations become, indeed, binding rules of conduct, but they are valid only as subordinate rules and when found to be within the framework of the policy which the Legislature has sufficiently defined" (page 428, 55 S.Ct. page 252).

We think Regulations No. 5 are within the framework of the policy defined by Congress in the Federal Alcohol Administration Act.

■ In addition to the purpose of protecting the revenue, the policy of Congress in that statute is to prevent unfair competition among manufacturers and dealers and to protect the consumer from deception, and to provide him with adequate information as to the identity and quality of the products offered for purchase.

By that statute the Federal Alcohol Administration was created as a division of the Treasury Department for the purpose of executing the law. The Administrator is directed to prescribe, subject to the approval of the Secretary, such rules and regulations as may be necessary to carry out his powers and duties (Sec. 2(a) (b) (d), 49 Stat. 977, 27 U.S.C.A. § 202).

The business of manufacturing, importing and selling distilled spirits, wine and malt beverages is to be conducted under a system of permits to be issued by the Administrator. Certain qualifications are required of permittees and the continuance of the permits is conditioned on compliance with certain requirements; for wilful violation of any conditions a permit may be cancelled in an administrative proceeding, but complaint, notice and hearing are essential, and from an order of cancellation an appeal may be taken to the appropriate United States Court of Appeals (Secs. 3, 4, 27 U.S.C.A. §§ 203, 204).

The statute then takes up the subject of unfair competition and unlawful practices. Subsections (a) (b) (c) and (d) of Section 5, 27 U.S.C.A. § 205 (a–d), prohibit a number of matters which Congress has determined constitute unfair competition. These are referred to as the exclusive outlet, the "tied house", commercial bribery and consignment sales.

The remainder of Section 5 is addressed to the protection of the consumer.

Subsection (e), 27 U.S.C.A. § 205(e), makes it unlawful for any person engaged in business as a distiller, brewer, rectifier, blender or other producer, or as an importer or wholesaler, to deal in interstate or foreign commerce or to remove from customs custody for consumption any distilled spirits, etc., in bottles unless the products are bottled, packaged and labeled in conformity with such regulations to be prescribed by the Administrator—

(1) As will prohibit deception of the consumer with respect to such products or the quantity thereof and as will prohibit such statements as the Administrator finds to be likely to mislead the consumer;

(2) as will provide the consumer with adequate information as to the identity and

quality of the products, the alcoholic content thereof, the net contents of the package, and the manufacturer or bottler or importer thereof;

(3) as will require an accurate statement, in the case of distilled spirits produced by blending or rectification, if neutral spirits have been used in the production thereof, informing the consumer of the percentage of such neutral spirits and the name of the commodity from which distilled;

(4) as will prohibit statements on the label that are disparaging of a competitor's products or are false, misleading, obscene, or indecent; and

(5) as will prevent deception of the consumer by use of a trade or brand name that is the name of any living individual of public prominence, or existing private or public organization.

Subsection (e) continues: "including regulations requiring, at time of release from customs custody, certificates issued by foreign governments covering origin, age and identity of imported products":

Subsection (f), 27 U.S.C.A. § 205 (f), forbids advertising by publications or by radio broadcasting if such advertising will tend to deceive the consumer in any of the particulars mentioned in paragraph (e).

Thus a fundamental purpose of the Act is to prevent deception of consumers of alcoholic liquors with respect to the product, its identity, quality and quantity, the presence of neutral spirits therein, and in other respects.

Congress directs that this purpose shall be accomplished by the making of regulations by the Administrator covering the labeling of bottles and packages of distilled spirits. As to imported spirits the Administrator is specifically directed to make regulations requiring as a condition of release from customs custody the production of certificates issued by foreign governments covering the origin, age and identity of imported products.

Pursuant to the mandate of the statute there was adopted Regulations No. 5 relating to the labeling and advertising of distilled spirits. Prior to such adoption a draft of the Regulations was submitted to the trade and a public hearing was had in the matter in October, 1935 at which testimony was received from distillers, importers, wholesalers and others.

Art. II of Regulations No. 5 prescribes standards of identity for distilled spirits.

Art. III deals with the labeling requirements for distilled spirits. Art. IV covers the requirements for withdrawal from customs custody of bottled imported distilled spirits.

Art. II, sec. 21, defines the standards of the various kinds of neutral spirits and whiskey. Paragraph (k) provides: " 'Scotch whiskey' is a distinctive product of Scotland, manufactured in Scotland in compliance with the laws of Great Britain regulating the manufacture of Scotch whiskey for consumption in Great Britain, and containing no distilled spirits less than three years old: Provided, That if in fact such product as so manufactured is a mixture of distilled spirits, such mixture is 'Blended Scotch whiskey' (Scotch whiskey —a blend). 'Scotch whiskey' shall not be designated as 'straight' ".

Art. IV, sec. 46 (a), provides: "Scotch, Irish, and Canadian whiskeys, in bottles, whether blended or unblended, imported on or after August 15, 1936, shall not be released from customs custody for consumption unless the invoice is accompanied by a certificate of origin issued by a duly authorized official of the British, Irish, or Canadian Governments, certifying (1) that the particular distilled spirits are Scotch, Irish, or Canadian Whiskey, as the case may be, (2) that the distilled spirits have been manufactured in compliance with the laws of the respective foreign governments regulating the manufacture of the whiskey for home consumption, and (3) that the product conforms to the requirements of the Immature Spirits Act of such foreign government for spirits intended for home consumption".

Such being the statute and the regulations made thereunder, plaintiff in June, 1938, shipped to New York from Scotland five cases of whiskey labeled "Sandy Ross Brand Blended Scotch Whiskey". Upon applying for release of this shipment from customs custody it produced two certificates from an officer of Customs and Excise of the British Government certifying that the whiskey was composed 50% of Scotch whiskey and 50% Northern Irish whiskey (exhibits 4, 5 to the complaint).

Section 24 of the Finance Act of 1933 (British General Public Acts, 23rd and 24th George V, ch. 19, p. 359) provides: "For the purpose of subsection (9) of section one hundred and five of the Spirits Act of 1880, (which relates to the accuracy of the description of spirits in a permit or certificate), spirits described as Scotch Whiskey

shall not be deemed to correspond to that description unless they have been obtained by distillation in Scotland from a mash of cereal grains saccharified by the diastase of malt and have been matured in a bonded warehouse in casks for a period of at least three years".

In a letter dated September 15, 1938 from an officer of the Commissioners of Customs and Excise to a representative of plaintiff, after quoting Section 24, it was said: "Spirits which in their entirety comply with the terms of the above definition would on request be certified by this Department as Scotch Whiskey" (Exhibit 11 to the complaint).

Only 50% of the contents of the Sandy Ross Brand is Scotch whiskey within this description. It is blended with an equal amount of spirits which have been distilled in Northern Ireland, the blending taking place in Scotland.

Plaintiff contends that it is entitled to import this blend into the United States as blended Scotch whiskey and to have the same released from customs custody, notwithstanding its failure to produce the required certificate. Admittedly defendants' refusal to release the whiskey is in accord with the Regulations, but plaintiff contends that the Regulations exceed the power conferred by the Federal Alcohol Administration Act.

The purpose of Congress is to prohibit deception of the consumer with respect to identity and quality of liquor imported into this country; this is to be accomplished in part by requiring the production of certificates issued by foreign governments covering origin, age and identity of imported products.

It is conceded that Scotch whiskey is whiskey distilled in Scotland as described in the section of the Finance Act above quoted, and that it is impossible to duplicate Scotch whiskey by distillation elsewhere.

Regulation 21 (k) correctly described Scotch whiskey.

The Commissioners of Customs and Excise of Great Britain will not certify a whiskey as Scotch unless its entire contents have been distilled in Scotland.

The position of defendants in this case is that if in Great Britain a particular whiskey is not permitted to be described as Scotch whiskey unless all of its contents have been distilled in Scotland, it will be a deception of American consumers to permit an importer to call anything else Scotch whiskey.

It seems to us that the Regulations are reasonably adapted to accomplish the purpose of Congress, and are "within the framework of the policy which the legislature has sufficiently defined".

The application for a preliminary injunction will be denied and the motion to dismiss the complaint will be granted. Counsel will submit the appropriate order.