**STATE OF NEW YORK, et al, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 90–CV–162.

United States District Court, N.D. New York.

Dec. 7, 1990.

Robert Abrams, Atty. Gen., State of N.Y., Dept. of Law, Albany, N.Y. (Donald P. Berens, Jr., Asst. Atty. Gen., of counsel), for plaintiff.

Harter, Secrest & Emery, Rochester, N.Y. (Edward Premo, II, of counsel), for County of Allegany.

Berle, Kass & Case, New York City (Deborah Goldberg, of counsel), Patrick M. Snyder, P.E., Cortland, N.Y. (Patrick M. Snyder, of counsel), for County of Cortland.

U.S. Dept. of Justice, Environmental & Natural Resources Div., Washington, D.C. (Louis Milkman, Martin Malsch, of counsel), for U.S.

Kenneth O. Eikenberry, Atty. Gen., State of Wash., Olympia, Wash. (Allen T. Miller, of counsel), for States of Wash. and Nev.

T. Travis Medlock, Atty. Gen., State of S.C., Columbia, S.C. (James P. Hudson, of counsel), Dept. of Health & Environmental Control, State of S.C., Office of Gen. Counsel, Columbia, S.C. (Carlisle Roberts, Jr., of counsel), for State of S.C.

CHOLAKIS, District Judge.*

It is my intention at this time to read a decision into the record. I know that it may seem very unusual that a decision will be read into the record on a matter that is as complex and involved as this case obviously is. I do not want any of the participants to think that their positions have not been given due weight. We have spent an extraordinary amount of time on this one case in the past two weeks. As a matter of fact, I dare say we have spent as much time on this single case as we have spent on any other three or four cases combined during the last three or four years.

I do think, however, that in fairness to all the participants that a decision be made as quickly as possible so those parties involved can make a determination as to their future course of action. And I do not feel that just letting this matter sit for any length of time will do justice to the parties or to the Act itself. I have listened to all of the arguments presented by all of the attorneys, and I think I have given you relatively free reign because I was waiting to see if anyone could say anything that would change the feeling that the Court had about this subject after reading all of the papers, and as you know, the papers were voluminous. As a matter of fact, if I could sell them by the pound, I think I'd be in very good shape.

The plaintiffs State of New York and the Counties of Allegheny and Cortland challenge the constitutionality of the Low–Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.Code Sections 2021b *et seq.*, on the grounds that the Act violates the Tenth and Eleventh Amendments as well as the Guaranty Clause and Due Process Clause of the United States Constitution.

Before the Court are numerous motions and cross-motions. At this juncture all parties have moved for summary judgment, and there appear to be no issues of material fact, and the case therefore appears ready for summary treatment by the Court.

The United States in its motions to dismiss and for summary judgment relies principally on the Supreme Court case of *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). This case calls into question the judiciary's ability and authority to consider challenges to Congressional power over the States. *Garcia* overturned *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), in which the Supreme Court proclaimed that the Tenth Amendment limited Congressional power to legislate under the Commerce Clause. The Court concluded in *National League* that the Tenth Amendment sheltered "the states' freedom to structure integral operations in areas of traditional governmental functions". Accordingly, Congress could not displace the states' freedom by regulating "the states as states" and limiting the attributes of state sovereignty. *Id.* 469 U.S. at 552–554, 105 S.Ct. at 1018–1019.

In *Garcia*, a sharply divided Court rejected *National League*, concluding:

In short, the framers chose to rely on a federal system in which special restraints on federal power over the states inhered principally in the workings of national

* The transcript of this opinion, delivered from the bench, has been edited for grammatical construction, organization of quotations, and augmentation of citations.

government itself rather than in the discrete limitations on the objects of federal authority. State sovereign interests, then are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power.

*Garcia,* 469 U.S. at 552, 105 S.Ct. at 1018.

The Court in *Garcia* ruled that judicial review of Congressional enactments founded on Commerce Clause powers should be limited primarily to an inquiry of whether the political process has failed. The Court did, however, indicate that some additional limits might exist on Congressional action based on "the constitutional structure". The *Garcia* court, however, did not define or identify these limits apart from citing without discussion the 1911 Supreme Court case of *Coyle v. Oklahoma,* 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853.

The citing of the *Coyle* case is significant. The *Coyle* case struck down a Congressional enactment which conditioned the statehood of Oklahoma on the placement of the state capital at a certain location. The Court acknowledged at page 565, 31 S.Ct. at 689, of that opinion that "the power to locate its own seat of government was essentially and peculiarly [a] state power". The holding in *Coyle,* however, is clearly based on the finding that Oklahoma was being forced to do something which no other state was being forced to do; that being to locate her capital according to the wishes of Congress.

The *Coyle* Court stated in the last paragraph of its opinion on page 580, 31 S.Ct. at 695, the following:

> The constitutional equality of the states is essential to the harmonious operation of the scheme upon which the Republic was organized. When that equality disappears, we may remain a free people, but the Union will not be the Union of the Constitution.

■ Therefore, this Court reads *Garcia* as allowing judicial interdiction of federal powers over the states in the following areas: One, when that power is the result of a defect in the political process, and two, possibly when constitutional equality among the states has been jeopardized.

*Garcia* and the 1988 Supreme Court decision *South Carolina v. Baker,* 485 U.S. 505, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988), foreclose, in this Court's view, judicial review of any Congressional action over the states which is validly enacted and equally applied to all states. Any review of the substantive merits of such an action apart from an inquiry into the "constitutional equality" of the action would require a judicially determined definition of the contours of state sovereignty. This Court is barred by *Garcia* from making such a definition.

The United States argues that there was no defect in the political process in the passage of the Act and that no other judicial challenge may be made pursuant to *Garcia.* Plaintiff Cortland County argues that several political process defects exist which should invalidate the law.

First, Cortland County argues that a lack of political accountability of Congress as regards this Act is a signal that the political process has failed. Cortland's argument is that Congress has passed a law which puts burdens on the states to pass certain unpopular laws. The political "heat" as well as the fiscal burden are then absorbed by the states rather than by Congress, the truly responsible party. Cortland also presents a second political defect theory in which the Congress is portrayed as being controlled by political action committees who have neutralized states' interests and influence.

Taking Cortland's second argument first, it is clear that the pervasiveness of political action committees in Congress is not the type of systemic breakdown envisioned by the *Garcia* court. This argument is really nothing less than an indictment of how the political system works. According to *Garcia,* the proper remedy is not judicial intervention but the rejection by voters of those representatives who are beholden to the special interest groups. The "built-in restraints that our system provides" will presumably correct this perceived problem. Therefore, Cortland's position is, in this Court's view, without merit.

Cortland's argument concerning political accountability is similarly lacking in legal foundation. In the *South Carolina v. Baker* case, the Supreme Court declined to define what was meant by "political defects" but did characterize the terms as referred to "extraordinary defects in the national political process". *Baker* 485 U.S. at 512, 108 S.Ct. at 1360. The Court in its discussion cited to a footnote contained in the 1938 Supreme Court case of *United States v. Carolene Products*, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234.

■ The Court interprets this authority as meaning that the "political process tests" referred to problems which may have had an untoward effect on a particular law's enactment or its subsequent political review. If the law is validly enacted, it may not thereafter be judicially challenged on political process grounds unless the effect of the law restricts a state from continuing meaningful political participation, where a state is foreclosed from challenging the law politically. In other words, the political process rationale for judicial intervention only arises when the legislative/political avenue has been functionally closed.

Such is not the case here. Nothing in the Act restricts New York's, or any other state's, ability to operate in the political arena and to challenge the law. This is not, in this Court's view, the type of political breakdown or type of extraordinary situation the Supreme Court envisioned as requiring judicial intervention. Therefore, this Court rejects any challenge to the Act based on the so-called "political process defect" test.

New York State argues that *Garcia* left open another path of attack other than the political process test. The State, joined by the other plaintiffs, argues that the Court still has the power to rule that particular laws destroy state sovereignty.

As just explained, this Court does not see how such an argument may be sustained and be consistent with *Garcia*. Plaintiffs do not allege that New York State is being treated inequitably with other States. The State's argument, reduced to its essence, would require this Court to dictate a sacred province of state autonomy, and this, in this Court's judgment, would violate the *Garcia* holding. In this Court's view, any claims under the Guaranty Clause are inextricably intertwined with the position just made in this decision, and those claims are accordingly dismissed.

The claims under the Eleventh Amendment are likewise dismissed pursuant to the Supreme Court holding in *Pennsylvania v. Union Gas*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

This Court is aware that the *Garcia* case was decided by a divided court, that the make-up of the Court has since changed, and that the *Garcia* doctrines may not survive. In fact, it may well be this case which results in *Garcia* being overturned. While this Court has problems with the *Garcia* holding, it is nonetheless constrained by the precedents which it reads as residing therein.

The defendant United States' motion to dismiss the complaint is therefore granted in all respects. I believe I have an appropriate order which will be signed and in all probability will be filed today. Thank you ladies and gentlemen.