304 U.S. 144 (1938)
UNITED STATES
v.
CAROLENE PRODUCTS CO.
No. 640.
Supreme Court of United States.
Argued April 6, 1938.
Decided April 25, 1938.
APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.
*145 Assistant Attorney General McMahon, with whom Acting Solicitor General Bell, and Messrs. William W. Barron and Paul A. Freund were on the brief, for the United States.
Mr. Geo. N. Murdock for appellee.
MR. JUSTICE STONE delivered the opinion of the Court.
The question for decision is whether the "Filled Milk Act" of Congress of March 4, 1923 (c. 262, 42 Stat. 1486, 21 U.S.C. §§ 61-63),[1] which prohibits the shipment in *146 interstate commerce of skimmed milk compounded with any fat or oil other than milk fat, so as to resemble milk or cream, transcends the power of Congress to regulate interstate commerce or infringes the Fifth Amendment.
Appellee was indicted in the district court for southern Illinois for violation of the Act by the shipment in interstate commerce of certain packages of "Milnut," a compound of condensed skimmed milk and coconut oil made in imitation or semblance of condensed milk or cream. The indictment states, in the words of the statute, that Milnut "is an adulterated article of food, injurious to the public health," and that it is not a prepared food product of the type excepted from the prohibition of the Act. The trial court sustained a demurrer to the indictment on the authority of an earlier case in the same court, United States v. Carolene Products Co., 7 F. Supp. 500. The case was brought here on appeal under the Criminal Appeals Act of March 2, 1907, 34 Stat. 1246, 18 U.S.C. § 682. The Court of Appeals for the Seventh Circuit has meanwhile, in another case, upheld the Filled Milk Act as an appropriate exercise of the commerce power in Carolene Products Co. v. Evaporated Milk Assn., 93 F. (2d) 202.
Appellee assails the statute as beyond the power of Congress over interstate commerce, and hence an invasion of a field of action said to be reserved to the states by the Tenth Amendment. Appellee also complains that the *147 statute denies to it equal protection of the laws and, in violation of the Fifth Amendment, deprives it of its property without due process of law, particularly in that the statute purports to make binding and conclusive upon appellee the legislative declaration that appellee's product "is an adulterated article of food injurious to the public health and its sale constitutes a fraud on the public."
First. The power to regulate commerce is the power "to prescribe the rule by which commerce is to be governed," Gibbons v. Ogden, 9 Wheat. 1, 196, and extends to the prohibition of shipments in such commerce. Reid v. Colorado, 187 U.S. 137; Lottery Case, 188 U.S. 321; United States v. Delaware & Hudson Co., 213 U.S. 366; Hope v. United States, 227 U.S. 308; Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311; United States v. Hill, 248 U.S. 420; McCormick & Co. v. Brown, 286 U.S. 131. The power "is complete in itself, may be exercised to its utmost extent and acknowledges no limitations other than are prescribed by the Constitution." Gibbons v. Ogden, supra, 196. Hence Congress is free to exclude from interstate commerce articles whose use in the states for which they are destined it may reasonably conceive to be injurious to the public health, morals or welfare, Reid v. Colorado, supra; Lottery Case, supra; Hipolite Egg Co. v. United States, 220 U.S. 45; Hope v. United States, supra, or which contravene the policy of the state of their destination. Kentucky Whip & Collar Co. v. Illinois Central R. Co., 299 U.S. 334. Such regulation is not a forbidden invasion of state power either because its motive or its consequence is to restrict the use of articles of commerce within the states of destination, and is not prohibited unless by the due process clause of the Fifth Amendment. And it is no objection to the exertion of the power to regulate interstate commerce that its exercise is attended by the same incidents which attend the exercise of the police power of the states. Seven Cases v. United States, 239 U.S. 510, 514; Hamilton v. Kentucky *148 Distilleries & Warehouse Co., 251 U.S. 146, 156. The prohibition of the shipment of filled milk in interstate commerce is a permissible regulation of commerce, subject only to the restrictions of the Fifth Amendment.
Second. The prohibition of shipment of appellee's product in interstate commerce does not infringe the Fifth Amendment. Twenty years ago this Court, in Hebe Co. v. Shaw, 248 U.S. 297, held that a state law which forbids the manufacture and sale of a product assumed to be wholesome and nutritive, made of condensed skimmed milk, compounded with coconut oil, is not forbidden by the Fourteenth Amendment. The power of the legislature to secure a minimum of particular nutritive elements in a widely used article of food and to protect the public from fraudulent substitutions, was not doubted; and the Court thought that there was ample scope for the legislative judgment that prohibition of the offending article was an appropriate means of preventing injury to the public.
We see no persuasive reason for departing from that ruling here, where the Fifth Amendment is concerned; and since none is suggested, we might rest decision wholly on the presumption of constitutionality. But affirmative evidence also sustains the statute. In twenty years evidence has steadily accumulated of the danger to the public health from the general consumption of foods which have been stripped of elements essential to the maintenance of health. The Filled Milk Act was adopted by Congress after committee hearings, in the course of which eminent scientists and health experts testified. An extensive investigation was made of the commerce in milk compounds in which vegetable oils have been substituted for natural milk fat, and of the effect upon the public health of the use of such compounds as a food substitute for milk. The conclusions drawn from evidence presented at the hearings were embodied in reports of the *149 House Committee on Agriculture, H.R. No. 365, 67th Cong., 1st Sess., and the Senate Committee on Agriculture and Forestry, Sen. Rep. No. 987, 67th Cong., 4th Sess. Both committees concluded, as the statute itself declares, that the use of filled milk as a substitute for pure milk is generally injurious to health and facilitates fraud on the public.[2]
There is nothing in the Constitution which compels a legislature, either national or state, to ignore such evidence, nor need it disregard the other evidence which amply supports the conclusions of the Congressional committees that the danger is greatly enhanced where an inferior product, like appellee's, is indistinguishable from *150 a valuable food of almost universal use, thus making fraudulent distribution easy and protection of the consumer difficult.[3]
*151 Here the prohibition of the statute is inoperative unless the product is "in imitation or semblance of milk, cream, or skimmed milk, whether or not condensed." Whether in such circumstances the public would be adequately protected by the prohibition of false labels and false branding imposed by the Pure Food and Drugs Act, or whether it was necessary to go farther and prohibit a substitute food product thought to be injurious to health if used as a substitute when the two are not distinguishable, was a matter for the legislative judgment and not that of courts. Hebe Co. v. Shaw, supra; South Carolina v. Barnwell Bros. Inc., 303 U.S. 177. It was upon this ground that the prohibition of the sale of oleomargarine made in imitation of butter was held not to infringe the Fourteenth Amendment in Powell v. Pennsylvania, 127 U.S. 678; Capital City Dairy Co. v. Ohio, 183 U.S. 238. Compare McCray v. United States, 195 U.S. 27, 63; Purity Extract & Tonic Co. v. Lynch, 226 U.S. 192.
Appellee raises no valid objection to the present statute by arguing that its prohibition has not been extended to oleomargarine or other butter substitutes in which vegetable fats or oils are substituted for butter fat. The Fifth Amendment has no equal protection clause, and even that of the Fourteenth, applicable only to the states, does not compel their legislatures to prohibit all like evils, or none. A legislature may hit at an abuse which it has found, even though it has failed to strike at another. Central Lumber Co. v. South Dakota, 226 U.S. 157, 160; Miller v. Wilson, 236 U.S. 373, 384; Hall v. Geiger-Jones Co., 242 U.S. 539, 556; Farmers & Merchants Bank v. Federal Reserve Bank, 262 U.S. 649, 661.
*152 Third. We may assume for present purposes that no pronouncement of a legislature can forestall attack upon the constitutionality of the prohibition which it enacts by applying opprobrious epithets to the prohibited act, and that a statute would deny due process which precluded the disproof in judicial proceedings of all facts which would show or tend to show that a statute depriving the suitor of life, liberty or property had a rational basis.
But such we think is not the purpose or construction of the statutory characterization of filled milk as injurious to health and as a fraud upon the public. There is no need to consider it here as more than a declaration of the legislative findings deemed to support and justify the action taken as a constitutional exertion of the legislative power, aiding informed judicial review, as do the reports of legislative committees, by revealing the rationale of the legislation. Even in the absence of such aids the existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators.[4] See Metropolitan Casualty Ins. Co. v. *153 Brownell, 294 U.S. 580, 584, and cases cited. The present statutory findings affect appellee no more than the reports of the Congressional committees; and since in the absence of the statutory findings they would be presumed, their incorporation in the statute is no more prejudicial than surplusage.
Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist. Chastleton Corporation v. Sinclair, 264 U.S. 543. Similarly we recognize that the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular *154 article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without the reason for the prohibition, Railroad Retirement Board v. Alton R. Co., 295 U.S. 330, 349, 351, 352; see Whitney v. California, 274 U.S. 357, 379; cf. Morf v. Bingaman, 298 U.S. 407, 413, though the effect of such proof depends on the relevant circumstances of each case, as for example the administrative difficulty of excluding the article from the regulated class. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 511-512; South Carolina v. Barnwell Bros., 303 U.S. 177, 192-193. But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it. Here the demurrer challenges the validity of the statute on its face and it is evident from all the considerations presented to Congress, and those of which we may take judicial notice, that the question is at least debatable whether commerce in filled milk should be left unregulated, or in some measure restricted, or wholly prohibited. As that decision was for Congress, neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it. Price v. Illinois, 238 U.S. 446, 452; Hebe Co. v. Shaw, supra, 303; Standard Oil Co. v. Marysville, 279 U.S. 582, 584; South Carolina v. Barnwell Bros., Inc., supra, 191, citing Worcester County Trust Co. v. Riley, 302 U.S. 292, 299.
The prohibition of shipment in interstate commerce of appellee's product, as described in the indictment, is a constitutional exercise of the power to regulate interstate commerce. As the statute is not unconstitutional on its face the demurrer should have been overruled and the judgment will be
Reversed.
MR. JUSTICE BLACK concurs in the result and in all of the opinion except the part marked "Third."
MR. JUSTICE McREYNOLDS thinks that the judgment should be affirmed.
MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of this case.
*155 MR. JUSTICE BUTLER.
I concur in the result. Prima facie the facts alleged in the indictment are sufficient to constitute a violation of the statute. But they are not sufficient conclusively to establish guilt of the accused. At the trial it may introduce evidence to show that the declaration of the Act that the described product is injurious to public health and that the sale of it is a fraud upon the public are without any substantial foundation. Mobile, J. & K.C.R. Co. v. Turnipseed, 219 U.S. 35, 43. Manley v. Georgia, 279 U.S. 1, 6. The provisions on which the indictment rests should if possible be construed to avoid the serious question of constitutionality. Federal Trade Comm'n v. American Tobacco Co., 264 U.S. 298, 307. Panama R. Co. v. Johnson, 264 U.S. 375, 390. Missouri Pacific R. Co. v. Boone, 270 U.S. 466, 472. Richmond Co. v. United States, 275 U.S. 331, 346. If construed to exclude from interstate commerce wholesome food products that demonstrably are neither injurious to health nor calculated to deceive, they are repugnant to the Fifth Amendment. Weaver v. Palmer Bros. Co., 270 U.S. 402, 412-13. See People v. Carolene Products Co., 345 Ill. 166. Carolene Products Co. v. McLaughlin, 365 Ill. 62; 5 N.E. 2d 447. Carolene Products Co. v. Thomson, 276 Mich. 172; 267 N.W. 608. Carolene Products Co. v. Banning, 131 Neb. 429; 268 N.W. 313. The allegation of the indictment that Milnut "is an adulterated article of food, injurious to the public health," tenders an issue of fact to be determined upon evidence.
NOTES
[1] The relevant portions of the statute are as follows:

"Section 61. . . . (c) The term `filled milk' means any milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried, or desiccated, to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat, so that the resulting product is in imitation or semblance of milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried, or desiccated. . . .
"Section 62. . . . It is hereby declared that filled milk, as herein defined, is an adulterated article of food, injurious to the public health, and its sale constitutes a fraud upon the public. It shall be unlawful for any person to . . . ship or deliver for shipment in interstate or foreign commerce, any filled milk."
Section 63 imposes as penalties for violations "a fine of not more than $1,000 or imprisonment of not more than one year, or both . . ."
[2] The reports may be summarized as follows: There is an extensive commerce in milk compounds made of condensed milk from which the butter fat has been extracted and an equivalent amount of vegetable oil, usually coconut oil, substituted. These compounds resemble milk in taste and appearance and are distributed in packages resembling those in which pure condensed milk is distributed. By reason of the extraction of the natural milk fat the compounded product can be manufactured and sold at a lower cost than pure milk. Butter fat, which constitutes an important part of the food value of pure milk, is rich in vitamins, food elements which are essential to proper nutrition and are wanting in vegetable oils. The use of filled milk as a dietary substitute for pure milk results, especially in the case of children, in undernourishment, and induces diseases which attend malnutrition. Despite compliance with the branding and labeling requirements of the Pure Food and Drugs Act, there is widespread use of filled milk as a food substitute for pure milk. This is aided by their identical taste and appearance, by the similarity of the containers in which they are sold, by the practice of dealers in offering the inferior product to customers as being as good as or better than pure condensed milk sold at a higher price, by customers' ignorance of the respective food values of the two products, and in many sections of the country by their inability to read the labels placed on the containers. Large amounts of filled milk, much of it shipped and sold in bulk, are purchased by hotels and boarding houses, and by manufacturers of food products, such as ice cream, to whose customers labeling restrictions afford no protection.
[3] There is now an extensive literature indicating wide recognition by scientists and dietitians of the great importance to the public health of butter fat and whole milk as the prime source of vitamins, which are essential growth producing and disease preventing elements in the diet. See Dr. Henry C. Sherman, The Meaning of Vitamin A, in Science, Dec. 21, 1928, p. 619; Dr. E.V. McCollum et al., The Newer Knowledge of Nutrition (1929 ed.), pp. 134, 170, 176, 177; Dr. A.S. Root, Food Vitamins (N. Car. State Board of Health, May 1931), p. 2; Dr. Henry C. Sherman, Chemistry of Food and Nutrition (1932), p. 367; Dr. Mary S. Rose, The Foundations of Nutrition (1933), p. 237.

When the Filled Milk Act was passed, eleven states had rigidly controlled the exploitation of filled milk, or forbidden it altogether. H.R. 365, 67th Cong., 1st Sess. Some thirty-five states have now adopted laws which in terms, or by their operation, prohibit the sale of filled milk. Ala. Agri. Code, 1927, § 51, Art. 8; Ariz. Rev. Code, 1936 Supp., § 943y; Pope's Ark. Dig. 1937, § 3103; Deering's Cal. Code, 1933 Supp., Tit. 149, Act 1943, p. 1302; Conn. Gen. Stat., 1930, § 2487, c. 135; Del. Rev. Code, 1935, § 649; Fla. Comp. Gen. Laws, 1927, §§ 3216, 7676; Ga. Code, 1933, § 42-511; Idaho Code, 1932, Tit. 36, §§ 502-504; Jones Ill. Stat. Ann., 1937 Supp., § 53.020 (1), (2), (3); Burns Ind. Stat., 1933, § 35-1203; Iowa Code, 1935, § 3062; Kan. Gen. Stat., 1935, c. 65, § 707; Md. Ann. Code, Art. 27, § 281; Mass. Ann. Laws, 1933, § 17-A, c. 94; Mich. Comp. Laws, 1929, § 5358; Mason's Minn. Stat., 1927, § 3926; Mo. Rev. Stat., 1929, §§ 12408-12413; Mont. Rev. Code, Anderson and McFarland, 1935, c. 240, § 2620.39; Neb. Comp. Stat., 1929, § 81-1022; N.H. Pub. L. 1926, v. 1, c. 163, § 37, p. 619; N.J. Comp. Stat., 1911-1924, § 81-8j, p. 1400; Cahill's N.Y. Cons. Laws, 1930, § 60, c. 1; N.D. Comp. Laws, 1913-1925, Pol. Code, c. 38, § 2855 (a) 1; Page's Ohio Gen. Code, § 12725; Purdon's Penna. Stat., 1936, Tit. 31, §§ 553, 582; S.D. Comp. Laws, 1929, c. 192, § 7926-0, p. 2493; Williams Tenn. Code, 1934, c. 15, §§ 6549, 6551; Vernon's Tex. Pen. Code, Tit. 12, c. 2, Art. 713a; Utah Rev. Stat., 1933, §§ 3-10-59, 3-10-60; Vt. Pub. L., 1933, Tit. 34, c. 303, § 7724, p. 1288; Va. 1936 Code, § 1197c; W. Va. 1932 Code, § 2036; Wis. Stat., 11th ed. 1931, c. 98, § 98.07, p. 1156; cf. N. Mex. Ann. Stat., 1929, §§ 25-104, 25-108. Three others have subjected its sale to rigid regulations. Colo. L. 1921, c. 30, § 1007, p. 440; Ore. 1930 Code, v. 2, c. XII, §§ 41-1208 to 41-1210; Remington's Wash. Rev. Stat., v. 7, Tit. 40, c. 13, §§ 6206, 6207, 6713, 6714, p. 360, et seq.
[4] There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments, which are deemed equally specific when held to be embraced within the Fourteenth. See Stromberg v. California, 283 U.S. 359, 369-370; Lovell v. Griffin, 303 U.S. 444, 452.

It is unnecessary to consider now whether legislation which restricts those political processes which can ordinarily be expected to bring about repeal of undesirable legislation, is to be subjected to more exacting judicial scrutiny under the general prohibitions of the Fourteenth Amendment than are most other types of legislation. On restrictions upon the right to vote, see Nixon v. Herndon, 273 U.S. 536; Nixon v. Condon, 286 U.S. 73; on restraints upon the dissemination of information, see Near v. Minnesota ex rel. Olson, 283 U.S. 697, 713-714, 718-720, 722; Grosjean v. American Press Co., 297 U.S. 233; Lovell v. Griffin, supra; on interferences with political organizations, see Stromberg v. California, supra, 369; Fiske v. Kansas, 274 U.S. 380; Whitney v. California, 274 U.S. 357, 373-378; Herndon v. Lowry, 301 U.S. 242; and see Holmes, J., in Gitlow v. New York, 268 U.S. 652, 673; as to prohibition of peaceable assembly, see De Jonge v. Oregon, 299 U.S. 353, 365.
Nor need we enquire whether similar considerations enter into the review of statutes directed at particular religious, Pierce v. Society of Sisters, 268 U.S. 510, or national, Meyer v. Nebraska, 262 U.S. 390; Bartels v. Iowa, 262 U.S. 404; Farrington v. Tokushige, 273 U.S. 484, or racial minorities, Nixon v. Herndon, supra; Nixon v. Condon, supra: whether prejudice against discrete and insular minorities may be a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry. Compare McCulloch v. Maryland, 4 Wheat. 316, 428; South Carolina v. Barnwell Bros., 303 U.S. 177, 184, n. 2, and cases cited.