UNITED STATES of America,
Plaintiff,

v.

Darren Guy ERLIN, Defendant.

Cr. No. 41292.

United States District Court
N. D. California.

April 4, 1968.

Cecil F. Pooie, U. S. Atty., David R. Urdan, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Sal C. Balistreri, San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL

OLIVER J. CARTER, District Judge.

After a trial before the Court without a jury defendant has been found guilty of selling d-Lysergic acid diethylamide, hereinafter referred to as LSD, in violation of the Drug Abuse Control Amendments Act of 1965, 21 U.S.C. § 333, § 331 (q) (2), § 360a(b), § 321(v) (3), and 21 C.F.R. § 166.3(c) (3). Defendant has moved for a judgment of acquittal notwithstanding the finding of guilt on the basis that the statute under which he was convicted is unconstitutional.

The information does not allege interstate transportation, and at the trial no evidence was offered to prove interstate transportation by the defendant. The government has proceeded upon the theory that it was unnecessary and immaterial to plead or prove interstate transportation of the drug by the defendant. Hence, the constitutional claims of the defendant both as to the constitutionality of the Act on its face and of its application in this case.

The Drug Abuse Control Amendments Act of 1965 has no requirement that the government in proving a violation of 21 U.S.C. § 331(q) (2), the sale of a drug such as LSD, show any involvement of the drug in question with interstate commerce, and by the same token it is no defense to such a prosecution that the defendant's activities have been entirely intrastate. The Act provides in 21 U.S.C. § 321(v) (3) that the Secretary of the Department of Health, Education and Welfare may upon investigation designate additional drugs to come under the control of the Act if he finds that the drug has a potential for abuse because of its depressant, stimulant or hallucinogenic effects. LSD has been designated as such a drug by the Secretary in 21 C.F.R. § 166.3(c) (3). In so designating a drug there is no requirement that such additional drug affect interstate commerce.

The Act is attacked as invalid on its face because it fails to require either that any new drug designated by the Secretary affect interstate commerce, or that a particular defendant's activities affect interstate commerce, and because this potentially gives the Act coverage over such a broad area that it improperly regulates purely intrastate activities. The Act is also attacked as invalid as applied to the local manufacture and sale of LSD because such activity in no way affects interstate commerce. Defendant argues that Congress lacks the power under the Constitution to regulate purely intrastate transactions in this way.

The Supreme Court of the United States has defined the power of Congress under the commerce clause in Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) as follows:

"Article I, § 8, cl. 3, confers upon Congress the power '[t]o regulate Commerce * * * among the several States' and Clause 18 of the same Article grants it the power '[t]o make all Laws which shall be necessary and proper for carrying into Execution

the foregoing Powers * * *' This grant, as we have pointed out in Heart of Atlanta Motel, [Heart of Atlanta Motel v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258] 'extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce' United States v. Wrightwood Dairy Co., 315 U.S. 110, 119 [62 S.Ct. 523, 526, 86 L.Ed. 726] (1942). Much is said about a restaurant business being local but 'even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce * * *.' Wickard v. Filburn, supra, [317 U.S. 111 at 125, 63 S.Ct. 82, 87 L.Ed. 122]. The activities that are beyond the reach of Congress are 'those which are completely within a particular State, which do not affect other States, and with which it is not necessary to interfere, for the purpose of executing some of the general powers of the government.' Gibbons v. Ogden, 9 Wheat. 1, 195, [6 L.Ed. 23] (1824). This rule is as good today as it was when Chief Justice Marshall laid it down almost a century and a half ago." Katzenbach v. McClung, supra, 379 U.S. at 301 and 302, 85 S. Ct. at 382 and 383.

■ Thus to determine whether Congress has the power to control the sale of stimulant or depressant drugs in general or even in situations where no part of a particular transaction involves interstate commerce, it is necessary to know whether traffic in such drugs "* * * so affect[s] interstate commerce, or the exertion of the power of Congress over it, as to make regulation of [it] appropriate means to the attainment of a legitimate end * * *" or "exerts a substantial economic effect on interstate commerce * * *" or whether on the contrary such activity does "not affect other states * * *" and need not be interfered with "* * * for the purpose of executing some of the general powers of the government."

In the Drug Abuse Control Amendments Act of 1965 Congress has made several specific findings that the activities it seeks to regulate did affect commerce and must be regulated to protect interstate commerce, even where there is no evidence that an individual transaction involves interstate commerce.

"The Congress hereby finds and declares that there is a widespread illicit traffic in depressant and stimulant drugs moving in or otherwise affecting interstate commerce; that the use of such drugs, when not under the supervision of a licensed practitioner, often endangers safety on the highways (without distinction of interstate and intrastate traffic thereon) and otherwise has become a threat to the public health and safety, making additional regulation of such drugs necessary regardless of the intrastate or interstate origin of such drugs; that in order to make regulation and protection of interstate commerce in such drugs effective, regulation of intrastate commerce is also necessary because, among other things, such drugs, when held for illicit sale, often do not bear labeling showing their place of origin and because in the form in which they are so held or in which they are consumed a determination of their place of origin is often extremely difficult or impossible; and that regulation of interstate commerce without the regulation of intrastate commerce in such drugs, as provided in this Act, would discriminate against and adversely affect interstate commerce in such drugs." Congressional Findings and Declaration of Policy, following 21 U.S.C.A. § 360a, Section 2 of Public Law 89–74.

■ Where the legislative judgment, such as the one here that illicit distribution of stimulant or depressant drugs

affects interstate commerce is drawn in question " * * * [the inquiry into whether a rational basis exists for such findings] must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it." United States v. Carolene Products Co., 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938).

 Thus the finding that the use of stimulant or depressant drugs when not under the supervision of a licensed practitioner, often endanger safety on the highways including interstate traffic thereon, since it is supported by common knowledge, is a sufficient basis for the proposition that intrastate distribution of such durgs does exert a substantial effect on interstate commerce.

In addition there was evidence before Congress[1] that intrastate sales of LSD exert a substantial competitive effect on the economics of the much wider, and generally interstate, distribution of barbiturates and amphetamines.

"Legislation should not be limited to the barbiturates and amphetamines, but should extend to all non-narcotic drugs capable of producing serious psychotoxic and antisocial effects when abused. Experience has proved that the drug abuser often turns to other drugs having similar effects when barbiturates or amphetamines become difficult to obtain." President's Advisory Commission on Narcotic and Drug Abuse, Final Report, U.S. Gov't Printing Office, (1963) at 44.

 This part of the report is evidence that there is a significant cross-elasticity of demand, or cross-utilization, between LSD and barbiturates and am-

phetamines. Further, it is common knowledge that these latter drugs are distributed throughout the country by a few large drug manufacturers. Thus it can reasonably be assumed that illicit LSD distribution substantially affects the interstate commerce of these more common drugs.

██ Finally, the action taken by Congress in seeking to control illicit distribution of stimulant and depressant drugs without regard to whether they have moved in interstate commerce is an entirely rational, appropriate, and perhaps the only, means of controlling the interstate commerce of such drugs in view of their elusive nature, i. e., lack of labels or other indicia of origin. Thus such control is very much necessary " * * * for the purpose of executing some of the general powers of the government," Gibbons v. Ogden, 22 U. S. (9 Wheat.) 1, 195, 6 L.Ed. 23 (1824), namely, that of control over interstate drug traffic.

██ Based on the foregoing it is the opinion of this Court that the Drug Abuse Control Amendments Act of 1965 is a constitutional exercise of Congress' power under the commerce clause both on its face and as applied to the purely intrastate manufacture and sale of LSD.

Accordingly, it is ordered that defendant's motion for a judgment of acquittal be, and the same is hereby denied.

It is further ordered that this case is set down and that the defendant appear for judgment and sentence before the Honorable Oliver J. Carter, in courtroom No. 11, United States District Court, 450 Golden Gate Avenue, San Francisco, California, on April 26th 1968, at 9:30 o'clock a. m.

---

1. See U.S.Code & Ad.News, 89th Cong. 1st Sess., Senate Report No. 337, pp. 1895, 1896 (1965), describing the committee's reliance on the work and recommendations of the President's Advisory Commission on Narcotic and Drug Abuse.