MILNOT COMPANY, a Michigan cor-
poration, Plaintiff,

v.

Elliot RICHARDSON, Secretary of
Health, Education and Wel-
fare, Defendant.

No. 4664.

United States District Court,
S. D. Illinois, S. D.

Nov. 9, 1972.

Alfred F. Newkirk and Herman G. Bodewes, Springfield, Ill., Shea, Gallop, Climenko & Gould, New York City, for plaintiff.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., Steven McNamara, Dept. of Health, Education and Welfare, Rockville, Md., for defendant.

## DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, District Judge

This is an action for declaratory judgment brought pursuant to Rule 57, F.R. Civ.P., asking the court to declare that the product known as "Milnot," manufactured by the plaintiff, is not within the purview of the provisions of 21 U.S. C. §§ 61–64; or, in the alternative, to de-clare that Act unconstitutional on the ground that it violates the provisions of the Fifth Amendment to the Constitution of the United States. The court has jurisdiction under 28 U.S.C. § 1346(a) (2). Pending for decision are cross motions for summary judgment under Rule 56, F.R.Civ.P.

The following facts are undisputed. Plaintiff is a Michigan corporation which has its principal place of business in the State of Illinois. The defendant is the duly appointed Secretary of Health, Education and Welfare of the United States, who is charged with enforcement of various food and drug laws, including the Filled Milk Act, 21 U.S.C. §§ 61–64. The substance involved in this case, Milnot, is a food product which basically is a blend of fat free milk and vegetable soya oil, to which are added vitamins A and D. In the production of this product cream is skimmed from whole fresh milk. The cream contains the butterfat content of the milk including the fat-soluble vitamins A, D and E. To the portion of the milk which remains after the skimming process, plaintiff adds, *inter alia*, soybean oil as well as vitamins A and D. This restores the liquid to a milk-like consistency and composition. The mixture is then evaporated so as to remove a portion of the water content. That Milnot is wholesome, nutritious, and useful as a food source is clear from the record.

The Filled Milk Act, promulgated by Congress in 1923, prohibits interstate shipment of filled milk products. Following enactment of that statute, plaintiff, then known as Carolene Products Company, violated it and was convicted. After much litigation, the United States Supreme Court twice upheld the validity of the statute. United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), and United States v. Carolene Products Co., 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15 (1944). At least since affirmance of its second conviction, plaintiff has limited its distribution of Milnot to intrastate commerce in the

several states where it is produced. In 1950, Carolene Products Company changed its name to Milnot Company.

It is further undisputed that through technical advancements since 1944, and a proliferation of treatments, including breakdowns, buildups, and various reconstitutions of whole fluid milk, several food products have appeared on the market in competition with Milnot, which are permitted to be shipped in interstate commerce, subject to regulation by defendant, and which are commonly known as imitation milk or imitation dairy products, as distinguished from filled milk products. Content analyses reveal that certain of these products are produced in part by combining skim milk with vegetable oil, while others are made by combining sodium caseinate with water and vegetable oils. It is clear and undisputed that sodium caseinate is a soluble white powder which is produced primarily by treating skim milk with an acid.

Both sides contend, and this court agrees, that there is no genuine issue as to any material fact for trial here. The legal questions presented by the undisputed factual record before the court and the briefs of counsel are:

(1) Is Milnot presently a "filled milk" within the meaning of 21 U.S.C. § 61?

(2) Is relitigation of the constitutionality of the Filled Milk Act barred by principles of res judicata?

(3) If not, does the Filled Milk Act deprive plaintiff of due process of law?

## COVERAGE

Congress has defined "filled milk" as "any milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried, or desiccated to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat, so that the resulting product is in imitation or semblance of milk, cream, or skimmed milk, whether or not condensed, evaporated, con-

centrated, powdered, dried, or desiccated. . . ." 21 U.S.C. § 61(c).

Milnot, by plaintiff's own description, "consists of a blend of fat free milk and vegetable soya oil"; and plaintiff makes no convincing argument that its product is really not "in imitation or semblance of" milk. Nor is it argued that Milnot comes within an exception provided in § 61(c) of the Act. It seems clear, therefore, that the Filled Milk Act does by its terms prohibit interstate shipment of the present-day product known as Milnot.

## RES JUDICATA

The defendant argues that since Milnot is a filled milk within the meaning of the statute and the constitutionality of the Act has been previously resolved by the United States Supreme Court, then, under principles of res judicata, the present action cannot be maintained. While it is true that the essential elements of res judicata are frequently listed as identity of parties, of subject matter, and of cause of action, that listing of elements is not adequate for all purposes and res judicata should not apply here. Even though the parties have previously litigated the issue of the constitutionality of the Filled Milk Act as applied to an earlier and quite similar Milnot product, subsequent litigation is not precluded where facts and conditions occurring after the prior judgment furnish a new basis for claims. 50 C.J.S. Judgments § 650. The defendant has cited many cases which he argues as support for the application of res judicata or collateral estoppel here, but all of these cases are inapposite because they do not involve changed circumstances. This court considers that the principle announced in Chastleton Corp. v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924), is controlling. Writing for the Court, Mr. Justice Holmes said,

"A law depending upon the existence of an emergency or other certain state

of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed." 264 U.S. at 547 & 548, 44 S.Ct. at 406.

Plaintiff suggests, and this court agrees, that the appearance and continued existence of new products on the market and in interstate commerce which are quite similar in composition to and competitive with Milnot, and also in imitation or semblance of milk as fully as is Milnot (even though perhaps not "filled milk" in a technical sense under the statutory definition), creates a new factual situation upon which the court should reconsider the constitutionality of the Filled Milk Act as applied to Milnot. The existence of imitation milk or "non-dairy creamers" is most certainly not irrelevant to this inquiry as the defendant contends. While Congress may select a particular evil and regulate it to the exclusion of other possible evils in the same industry, any distinction drawn must at least be rational. Present distinctions which defendant finds between Milnot and other similar wholesome milk derivative products, in relation to the Filled Milk Act and its purposes, seem clearly subject to present examination on that score.

### COURT'S DISCRETION IN DECLARATORY JUDGMENT ACTION

■■ Defendant suggests, as an alternative basis for dismissal, that since this case involves a constitutional challenge, the court should exercise its discretion and decline to render a declaratory judgment. In development of this argument, defendant asserts that plaintiff's proper recourse is legislative rather than judicial. Assuming that the factual basis for the Filled Milk Act now does require review, the court is not at liberty to shut its eyes to a possible constitutional infirmity out of deference to Congress, when the validity of the law depends upon the truth of what is de-

clared. Chastleton Corp. v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924). While this court most certainly does not sit as a "super legislature," weighing the wisdom, need, or general appropriateness of legislative policy, it must consider the possible violation of due process of law in existing declared policy. That remains for discussion here.

### DUE PROCESS

■■ The measuring stick to which legislative acts must conform in order to satisfy due process has been stated in the previous *Carolene* decisions, *supra*. That is, regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless, in light of the known facts, it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators. United States v. Carolene Products, 304 U.S. 144, 152, 58 S.Ct. 778, 89 L.Ed. 15 (1938). And as previously stated, the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist. Chastleton Corp. v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924).

■ From the undisputed facts in the record here, it appears crystal clear that certain imitation milk and dairy products are so similar to Milnot in composition, appearance, and use that different treatment as to interstate shipment caused by application of the Filled Milk Act to Milnot violates the due process of law to which Milnot Company is constitutionally entitled. No useful purpose is served by listing such products here by name or otherwise, or by discussing the dairy market conditions and dangers of confusion which led to the passage and judicial upholding of the Filled Milk Act many years ago. Suffice it to say that this court finds that the latter have long since ceased to exist.[1]

---

1. It is not insignificant in this regard that some eleven states which passed filled milk acts have since discarded them—five by repeal and six by court action. By

■ It is true that equal protection of the laws does not require identical treatment among those similarly situated, but it does require that arbitrary or capricious distinctions not be made. Wickard v. Filburn, 317 U.S. 111, 129, 63 S.Ct. 82, 87 L.Ed. 122 (1942). It is uncontested that many of these imitation milk and dairy products contain as basic and primary ingredients skim milk and vegetable oil. The defendant does argue that certain of these products on the retail market are not "in imitation or semblance of milk" to the extent that Milnot is. While each product, including Milnot, has, by design of its producer, its own unique taste, it appears clear that at least six other food products now moving in interstate commerce have almost identical appearance and consistency to milk (or evaporated milk) and to each other, both in the package and when poured. The defendant may well be correct in determining that each such product, other than Milnot, is not within the purview of the Filled Milk Act; but this circumstance seems simply to lend support to the conclusion that an act which produces such incongruous results regarding interstate shipment alone is devoid of rationality. The possibility of confusion, or passing off, in the marketplace, which justified the statute in 1944, can no longer be used rationally as a constitutional prop to prevent interstate shipment of Milnot. There is at least as much danger in this regard with imitation milk as with filled milk, and actually no longer any such real danger with either.

Similarly, the facts that Milnot legitimately appears on grocery shelves in the various states where it is produced, that there is a growing trend of manufacture and sale of filled milk overseas, and that there is widespread use thereof by American armed forces overseas, all add to the irrationality of the subject Act as applied to Milnot in this country. Prevention of confusion in the market, however valid in 1944, is no longer a valid basis to sustain the Filled Milk Act, and thus to prevent only the interstate shipment of Milnot (or any other product of milk which is *exactly* like it).

## LABELING

■ The Filled Milk Act applies to the contents and is not involved with labeling of the product. As the Supreme Court specifically recognized in the second *Carolene* case, the question of proper labeling is irrelevant to the issue of the constitutionality of the Act. 323 U.S. at 31. The evil of confusion in the marketplace clearly is one which Congress has the power to minimize by regulation, and this court does not here decide that Milnot is or is not properly labeled under various statutory provisions. Defendant refused to admit, on the request of plaintiff in this case, that Milnot is properly labeled; and that is a matter for resolution between the parties or further enforcement action by defendant; but it is a dispute of fact which is wholly immaterial to the decision here. This court limits its decision to the conclusion, as a matter of law, that the Filled Milk Act, as applied to prohibit interstate shipment of Milnot, deprives the plaintiff of due process of law and provides no rational means for the achievement of any announced objective of the Act.[2]

far, the majority of states now permit wholesome and properly labeled filled milk products. It is worth noting, also, that when the Federal Filled Milk Act was passed by Congress and upheld by the Supreme Court, the presently accepted dangers of "cholesterol" in animal fat were almost unknown.

2. Certainly no criticism is implied of defendant's vigorous enforcement of the Filled Milk Act to date, or of his scholarly efforts to defend its presumptive validity in this court. It is clearly the duty of defendant to so comport himself with respect to any statute within his purview, rather than to assume its invalidity, even if justification is not apparent to him. That is the essence of the separation of powers under the Constitution of the United States.

It is ordered, accordingly, that declaratory judgment enter herein, declaring that plaintiff has the right to market its product Milnot in interstate and foreign commerce, free from any prosecution or other interference from defendant for violation of the Filled Milk Act (Title 21, United States Code, Sections 61 thru 64).

It is further ordered that defendant's motion for summary judgment is denied.