**MILNOT COMPANY, a Michigan Corporation, Plaintiff,**

v.

**ARKANSAS STATE BOARD OF HEALTH, and its members, et al., Defendants.**

**No. LR–73–C–182.**

United States District Court, E. D. Arkansas, W. D.

Feb. 3, 1975.

Dale Price, Howell, Price, Howell & Barron, Little Rock, Ark., for plaintiff.

W. A. Eldredge, Jr., Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This declaratory judgment action is brought by the Milnot Company, a Michigan corporation which has its principal place of business in Illinois and which manufactures a food product under the trade name of "Milnot." The defendants are the Arkansas State Board of Health and its individual members who are charged with enforcement of the Arkansas Filled Milk Act, Act 190 of 1925, Ark.Stat.Ann. § 82–919, which reads as follows:

"It shall be unlawful to manufacture or sell filled milk in the State of Arkansas.

"Filled milk is defined, by this act, to be cow's or goat's milk which has had all or the greater part of the butterfat removed, and had substituted in lieu thereof cocoanut oil, peanut oil, or some other oil or fat."

Section 2 of this Act provides that violators are guilty of a misdemeanor punishable by a fine of not less than $50.00 nor more than $500.00. The defendants claim that Milnot is a "filled milk" product within the meaning of Ark.Stat.Ann. § 82–919 and have refused to permit the plaintiff to sell or distribute Milnot in Arkansas. Plaintiff asks this Court pursuant to 28 U.S.C. § 2201 to declare that Milnot does not come within the purview of the Arkansas Filled Milk Act

or, in the alternative, to declare the statute unconstitutional on the ground that it violates the provisions of the Fourteenth Amendment to the United States Constitution. The case is now before the Court on cross-motions for summary judgment.[1]

The product involved in this case, Milnot, is a blend of fat free milk and soya oil to which is added vitamins A and D. The first step in the production process is to remove the butterfat from milk and to apply a heat treatment which pasteurizes the product and stabilizes the protein in order to produce a smooth viscous substance. The product is then concentrated by evaporation of over half the remaining water, and after the butterfat is replaced with soya oil, vitamins are added, the product is homogenized, sealed in containers, and sterilized. In a stipulation of facts, the parties agree that Milnot is not deleterious to the health and that it fully complies with all applicable nutrition standards. The defendants admit that a "product consisting of milk from which butterfat has been removed and combined with soya or soybean oils and fortified with Vitamins A and D, is wholesome, nutritious and useful as a food source." Nor is there any contention that Milnot's labeling creates consumer confusion or deception since the parties stipulate that the label "contains an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count" and since the affidavit submitted by a Vice President of Milnot, William Adams, is unopposed in the assertion that Milnot complies with federal labeling standards.

While no legislative history is available concerning the purposes of the Arkansas Filled Milk Statute, Congress enacted the Federal Filled Milk Act, 21 U. S.C. §§ 61–64, in 1923 in the belief that

1. Plaintiff's original complaint also asked that the defendants be "enjoined" from prosecuting plaintiff for violation of the Act, but the request was abandoned in an amended complaint filed with the Court on September 11, 1974. Since no injunctive relief is requested, 28 U.S.C. § 2281 does not require a three judge panel. Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

the butterfat portion of milk was the only source of essential vitamins contained in milk. The Act also sought to aid the interests of milk producers and to protect the consuming public from deception and confusion believed inherent in the sale of imitation dairy products. *See*, United States v. Carolene Products Co., 51 F.Supp. 675 (N.D. W.Va.1943); Carolene Products Co. v. United States, 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15 (1944). Between the years 1920 and 1940, many states adopted legislation prohibiting or severely limiting the sale of filled milk products, but shortly thereafter, as additional facts about filled milk became known, the absolute bar began to weaken. Post-war scientific studies quickly established the cholesterol laden properties of the butterfat portion of milk, and fortified food items containing vitamins were developed. Today, many states have repealed filled milk laws or the statutes have been declared invalid by the courts.

■ Initially, the Court refuses to construe the Arkansas Filled Milk Act so as to avoid the constitutional issue squarely presented by this case. The plaintiff argues that the statute should be construed as applicable only to harmful products or products intentionally sold for purposes of deception since the purpose of the statute is to keep non-nutritious milk substitutes off the market and to prevent consumer deception. However, this Court cannot ignore the clear language of the Act which defines "filled milk" to be cow's or goat's milk from which the greater part of the butterfat has been removed and replaced with oil or fat. Milnot unquestionably meets these criteria.

Plaintiff predicates its contention that the Act violates the Fourteenth Amendment upon the Due Process Clause and the Equal Protection Clause. The due process argument is premised on the complete prohibition of the sale of filled milk, and the equal protection claim rests on the allegation that the State of Arkansas applies the statute in a discriminatory manner by permitting the sale of other products that contain essentially the same ingredients and serve the same purpose as Milnot.

■■ Those states which have held that filled milk statutes violate the Due Process Clause of the Fourteenth Amendment have based statutory invalidity on the absence of a rational relationship between the public interest to be protected and the remedy adopted by the legislature—the complete prohibition of the sale of filled milk products. However, regulatory legislation affecting ordinary commercial transactions should be upheld unless in light of facts made known or generally assumed the legislation cannot be said to rest upon some rational basis within the knowledge of the legislators. United States v. Carolene Products Co., 304 U.S. 144, 152, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). The constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing that those facts have ceased to exist. *Id.*, at 153, 58 S.Ct. 778. Such inquiries, however, "must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it." *Id.*, at 154, 58 S.Ct. at 784.

While the *Carolene* cases upheld the constitutionality of the Federal Filled Milk Act against due process and equal protection arguments, this Court believes that changed circumstances render these authorities of little precedential value in assessing the validity of the Arkansas statute in 1974. In the 1938 *Carolene* case, the Filled Milk Act was upheld on the basis of findings made by Congress in 1923 that the substitution of vegetable fat for butterfat was injurious and nutritionally unsound. As stated, present knowledge indicates that these conclusions were erroneous and that filled milk with vitamins constitutes a nutritious and wholesome product. However, neither the parties' stipulation of facts nor the plaintiff's affidavit contains sufficient information to allow the Court to rule at this time that the Arkansas Filled Milk Act is unsup-

ported by "any state of facts either known or which could reasonably be assumed." It is possible, of course, that defendants could prove at trial that filled milk is not as nutritious as natural milk, and such a state of facts might afford a rational basis for the statute. The 1944 *Carolene* case upheld the federal statute on the ground that it was necessary to protect the consumer from being confused and deceived due to the similarity of filled and natural milk. Again, the Court doubts the current validity of this assumption, but the information before the Court on the cross-motions for summary judgment simply does not warrant a finding of no rational basis for the legislation in issue. For example, the State might be able to prove that products similar to Milnot are dangerous to health and that prohibition of all filled milk products is reasonably necessary to protect the public health due to the inability of the consumer to distinguish the good from the bad. This Court cannot use "the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." Williamson v. Lee Optical Co., 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *see also*, Olsen v. Nebraska, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1941); Ferguson v. Skrupa, 372 U.S. 726, 83 S. Ct. 1028, 10 L.Ed.2d 93 (1963); North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973).

Most recently, however, the Federal Filled Milk Act has been declared unconstitutional as applied to the very product in this case, Milnot. Milnot Co. v. Richardson, 350 F.Supp. 221 (S.D.Ill.1972). There, the court ruled that the United States applied the Act in a discriminatory manner by allowing products essentially the same as Milnot in composition, appearance, and use to be sold in interstate commerce. The court found that discriminatory application of the Federal Filled Milk Act constituted a denial of equal protection since the discrimination did not rest on a rational basis. Similarly, Milnot Company contends in its motion for summary judgment before this Court that Arkansas applies its statute in a discriminatory manner by permitting the sale of products so similar to Milnot in composition, use, and appearance as to constitute a violation of equal protection under the Fourteenth Amendment.

The Arkansas Filled Milk Act, in substance, imposes an absolute prohibition on the sale or manufacture of filled milk products without qualification as to use, contents, purpose, or need. The all-encompassing definition of filled milk brings within its ambit milk from which butterfat has been removed and to which oils or fat have been addded; thus, any product composed of skim milk and oils or fat is barred in Arkansas. The parties have stipulated that: (1) numerous products are sold in Arkansas which contain primarily a blend of skim milk or non-fat milk solids to which has been added vegetable or soya oils and vitamin additives; (2) the removal of butterfat from natural milk results in a product commonly called "skim milk"; and (3) a content analysis of these foods demonstrates that they fall within the definition of filled milk under the Arkansas Filled Milk Act. The fact that these items are sold in Arkansas as dietary foods or as infant formulas affords no protection under the Arkansas statute; nor does the addition of additives which alter the taste, smell, or texture afford protection from the blanket prohibition of the law. Likewise, Milnot may be used as a special non-cholesterol dietary food and it also contains additives set out on the label which alter its taste, smell, and texture. The Act, in essence, makes no distinction between Milnot and the other filled milk products currently being sold in the State.

In an affidavit in support of their cross-motion for summary judgment, the defendants seek to distinguish between Milnot and other filled milk products

which the State permits to be sold—Enfamil Infant Formula, Modilac Infant Formula, Nutrament, Sego Liquid Diet Food, Similac Concentrated Infant Formula, Slender, Sealtest Sour Dairy Dressing, Similac ADVANCE Liquid Food, and Pet Imitation Sour Cream. The defendants contend that Milnot is an imitation milk product while the other products sold in Arkansas are primarily dietary and infant food products; hence a rational basis exists for the different treatment by the Arkansas Board of Health. In other words, a state administrative agency may make reasonable classifications among products in the administration of a valid law which does not call for any such classification. Apparently, this argument was accepted by a three judge court in Quality Food Products, Inc. v. Beard, 286 F.Supp. 351 (M.D.Ala.1968).

■ Thus, two issues remain before the Court: (1) whether the Equal Protection Clause prohibits discriminatory administration of valid penal statutes; and (2) whether a state administrative agency may make reasonable classifications among filled milk products in the administration of a valid law which on its face prohibits the sale of all filled milk products. For the following reasons, the Court finds that purposeful discrimination in the administration of laws violates equal protection and that the Arkansas State Board of Health has not reasonably distinguished between Milnot and the above products, even assuming that the Board has the power to make such distinctions.

The Eighth Circuit, in dicta, has given approval to the doctrine stated in Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), that:

"Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights,

the denial of equal justice is still within the prohibition of the Constitution." Shock v. Tester, 405 F.2d 852, 855 (8th Cir. 1969).

While the *Yick Wo* principle usually arises as a defense to a criminal prosecution, the Court finds no substantive difference where the doctrine is used affirmatively by a civil litigant contesting the discriminatory administration of a valid statute by an administrative agency. *Cf.* Tollett v. Laman, 497 F.2d 1231, 1233 (8th Cir. 1974). Policy considerations militating against use of this defense in a criminal proceeding—condonation of prior criminal conduct—are not present in a civil proceeding where the plaintiff seeks a declaratory judgment regarding a future course of action.

■ Hence, the case turns on whether the State Board of Health's intentionally different treatment of Milnot and the above mentioned products rests on a rational basis. If not, then the Court need not reach the question of whether a state agency may classify products where the statute makes no provision for such a classification.

Both Milnot and these other products permitted to be sold in Arkansas primarily consist of milk from which the butterfat portion has been removed and replaced with vegetable oil and then fortified with vitamins. While these other products contain more vitamins than Milnot and thus are more suitable as a complete meal substitute, Milnot serves as a dietary substitute for milk and other high protein products since it contains no cholesterol. In short, all these products, including Milnot, are essentially the same in composition, use, and appearance, and this Court finds that no rational basis exists for distinguishing between them. Accordingly, the Court holds that the plaintiff is being denied equal protection of the laws as guaranteed by the Fourteenth Amendment. The plaintiff's motion for summary judgment is granted and the defendants' motion is denied. An appropriate order will be entered.