**MILNOT COMPANY, a Delaware Corporation, Plaintiff,**

v.

**Gus R. DOUGLAS, Commissioner, West Virginia Department of Agriculture, and West Virginia Department of Agriculture, Defendants.**

Civ. A. No. 77–2526.

United States District Court,
S. D. West Virginia,
Charleston Division.

June 16, 1978.

Willis O. Shay, Clarksburg, W. Va., for plaintiff.

Thomas H. Vanderford, IV, Charleston, W. Va., for defendants.

## MEMORANDUM OPINION

DENNIS R. KNAPP, Chief Judge.

Plaintiff Milnot Company instituted this action praying for a preliminary and permanent injunction enjoining defendants from embargoing or otherwise restricting the marketing in this state of Milnot Dairy Vegetable Blend (Milnot), a food product produced by plaintiff.

In November, 1977, defendants embargoed and removed from three Kroger stores in Parkersburg, West Virginia, a substantial quantity of Milnot and halted all further distribution of Milnot in the state. Defendants contend that their power to embargo and halt sales of Milnot is predicated upon the provisions of Chapter 19, Article 11, Section 2, of the Code of West Virginia, as amended, (W.Va.Code, 19–11–2), which states:

§ 19–11–2. Manufacture or sale of filled milk.

It shall be unlawful for any person to manufacture, offer or expose for sale or exchange, or have in his possession with intent to sell, offer or expose for sale or exchange, either in bulk or in containers, sealed or unsealed, under any name whatever, any condensed, evaporated, concentrated, powdered, dried or desiccated milk, cream or skimmed milk to which has been added or with which has been blended or compounded any fats or oils other than milk fats, producing what is known as filled milk.[1]

This action followed, plaintiff contending that the above statute is, on its face, and as applied to plaintiff, repugnant to the Due Process and Equal Protection clauses of the Fourteenth Amendment to the Constitution of the United States.

This Court, with the consent of the parties, advanced this cause for a final determination on the merits.

A joint stipulation of facts has been filed by the parties and is offered as evidence in this case in support of their respective positions. It states as follows:

"1. The Milnot Company is a corporation organized under the laws of the State of Delaware, and is qualified to do business in West Virginia, having its principal place of business at 120 West St. John Street, Litchfield, Illinois.

---

1. The penalties for violating this statute are contained in W.Va.Code 19–11–4.

2. The Milnot Company engages nationwide in the processing, marketing, distribution and sale of the food product hereinafter described under the trade name or label of Milnot.

3. Milnot consists of a blend of fat-free milk and vegetable (soya) oil, supplemented and fortified with Vitamins A and D. Milnot contains sweeteners, stabilizers, flavorings and vitamin concentrates but no milk fats, or solids other than milk solids.

4. Milnot falls within the classification of "filled milk" as set forth in W.Va.Code, 19–11–2, which statute further prohibits the manufacture or sale thereof in West Virginia.

5. The composition of natural milk is such that the non-fat solid portion is separable from the butterfat portion. The non-fat solid portion when separated either in whole or in part from the butterfat is commonly referred to as "skim milk" or "non-fat milk solids."

6. The removal of the butterfat from natural milk does not necessarily render the resulting product, skim milk, injurious to health.

7. Skim milk is a wholesome, nutritious food source when processed in accordance with proper standards and procedures.

8. The concentration of milk, milk derivatives, milk products and Milnot by the process known as 'evaporation' does not affect adversely the nutritional value of such products.

9. Soya or soybean oils are wholesome, nutritious and useful food sources when processed in accordance with proper standards and procedures.

10. The addition of soya or soybean oils to skim milk or non-fat milk solids does not necessarily render the resulting product injurious to health.

11. Milnot is prepared and processed in accordance with proper standards and procedures which assure and preserve a safe and nutritive product. It contains no deleterious or harmful matter; and does not necessarily adversely affect the health of individuals consuming such product.

12. Milnot is processed in the following manner:

a. The butterfat is removed from natural milk. A heat treatment is then applied to the resulting non-fat milk solid which pasteurizes and stabilizes the protein therein in order to produce a smooth viscous product. Concentration of the product is then accomplished by the removal through evaporation of over half of the water, and soya or soybean oil is then added in place of the butterfat, producing the product Milnot. Each 13 fluid ounce container of Milnot is then fortified with 2,000 USP units of Vitamin A and 400 USP units of Vitamin D. Thereafter, the product is homogenized, which serves to inhibit fat separation and to aid digestion.

b. Milnot is then tested several times for total solids and fat content to insure compliance with claims on the label on standardization. The container of Milnot is hermetically sealed. Sterilization heat is applied as a final stage in the process.

13. Plaintiff Milnot Company operates modern, sanitary and hygienic plant facilities in the states of Indiana, Missouri, Oklahoma and Illinois, which plants are in compliance with all local, state and federal health standards.

14. Milnot, and each component ingredient thereof, is a nutritive substance and is of such quality as to comply fully with all applicable governmental nutrition standards.

15. Milnot is nutritionally beneficial to persons whose diet requires the elimination of butterfat and to infants unable to tolerate or adapt to butterfat.

16. The label attached hereto as Exhibit No. 1 properly sets forth the name and place of business of the manufacturer, packer or distributor and contains an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.

17. The chemical analysis of Milnot is as follows:

| | 1 Can 13 Fl. Oz. | |
|---|---|---|
| Calories | 493 | |
| Fats | 24.65 | gm |
| Carbohydrates | 39.88 | gm |
| Protein (Animal) | 28.42 | gm |
| Total Mineral Salts | 5.66 | gm |
| Calcium | 972 | mg |
| Phosphorus | 754 | mg |
| Potassium | 1117 | mg |
| Magnesium | 94 | mg |
| Chlorine | 943 | mg |
| Sodium Salt | 464 | mg |
| Copper | .102 | mg |
| Iron | .363 | mg |
| Thiamine ($B_1$) | .232 | mg |
| Riboflavin ($B_2$ or G) | 1.60 | mg |
| Niacin | .83 | mg |
| Ascorbic Acid | 4.50 | mg |
| Vitamin A | 2000 | USP |
| Vitamin D | 400 | USP |

18. The composition of the vegetable fat within Milnot is calculated to be:

Fatty Acid Composition

| | | | |
|---|---|---|---|
| Saturated | 17.3% | Linolenic | 1.3% |
| Total Oleic | 58.5% | Other | .1% |
| Linoleic | 22.8% | Arachidonic | 0% |

19. The soya oil used in Milnot is a highly refined cholesterol-free soya oil with an iodine value of 96 maximum. Such oil is a mono-unsaturated and poly-unsaturated vegetable fat product.

20. Milnot has generally the same texture, consistency and look as condensed milk products. Milnot is customarily marketed in locations adjacent to condensed milk products. Milnot has not in recent years prior to January, 1977, been marketed in West Virginia, and consequently no substantial sales nor substantial income have been generated by the sale of Milnot in West Virginia.

21. The Department of Agriculture of the State of West Virginia has not embargoed Similac and other products of a similar nature because the Department considers them to be an exception to the 'filled-milk' law in that these products are specially prepared infant formulas or special dietary foods which the West Virginia Department of Agriculture, based on its knowledge of prior federal regulations, believes to be an acceptable exception of the operation of the West Virginia filled milk law."

Additionally, Exhibit 1 contains nine products in addition to Milnot which are filled milk products presently being marketed in West Virginia which are not subject to any embargo or other restriction imposed by any agency of the state, including the named defendants in this action.[2]

## DISCUSSION

■ From the plain language contained in W.Va.Code, 19–11–2, it is apparent that those provisions are absolute. That is, by the terms thereof, any milk product from which is extracted the butterfat and to which has been added "any fats or oils other than milk fats" is filled milk. Defendants seek to prohibit the sale of one filled milk product, Milnot, while at the same time allowing other filled milk products, including baby formula products, to be sold. Defendants contend that by reason of these types of products being specially prepared infant formulas or special dietary foods, they are acceptable exceptions to the filled milk law. (See, Stipulation No. 21). While defendants might make such distinction, W.Va.Code, 19–11–2 does not. The statute's proscriptions are, once again, absolute on its face.

■ It is most certainly true that equal protection of the laws "does not require identical treatment among those similarly situated, but it does require that arbitrary or capricious distinctions not be made." *Milnot Co. v. Richardson*, 350 F.Supp. 221, 225 (S.D.Ill.1972).

The district court in *Milnot Co. v. Arkansas State Board of Health*, 388 F.Supp. 901 (E.D.Ark.1975), was confronted with a case virtually identical with the case at bar.

**2.** See, Consent Order of January 25, 1978. The products listed in Exhibit 1 are as follows: Carnation Instant Hot Cocoa Mix; Swiss Miss Hot Cocoa Mix; King Sour Non-Butterfat Sour Dressing (manufactured by American Whipped Products, Inc.); Similac "Advance" Homogenized Nutritional Beverage; Similac Concentrated Liquid; Emfamil Concentrated Liquid Infant Formula; "Frosted" A Sterilized Melloream Product (manufactured by Borden); Carnation Slender; SMA Iron Fortified Infant Formula; Milnot Dairy Vegetable Blend.

There, the State Board of Health, notwithstanding the proscriptive provisions of the Arkansas Filled Milk Act[3], permitted the sale of infant formulas and other filled milk products while prohibiting the sale of Milnot. The Board of Health contended that a rational basis for barring Milnot existed because it considered Milnot an imitation milk product while considering the non-barred products primarily dietary and infant food products, the same distinction advanced by the West Virginia agricultural authorities.

Concluded the district court, 388 F.Supp. at p. 905:

"Hence, the case turns on whether the State Board of Health's intentionally different treatment of Milnot and the above mentioned products rests on a rational basis. If not, then the Court need not reach the question of whether a state agency may classify products where the statute makes no provision for such a classification.

"Both Milnot and these other products permitted to be sold in Arkansas primarily consist of milk from which the butterfat portion has been removed and replaced with vegetable oil and then fortified with vitamins. While these other products contain more vitamins than Milnot and thus are more suitable as a complete meal substitute, Milnot serves as a dietary substitute for milk and other high protein products since it contains no cholesterol. In short, all these products, including Milnot, are essentially the same in composition, use, and appearance, and this Court finds that no rational basis exists for distinguishing between them. Accordingly, the Court holds that the plaintiff is being denied equal protection of the laws as guaranteed by the Fourteenth Amendment. . . ."

Likewise, we find that the defendants have failed to show a rational basis for their treatment of Milnot, vis-a-vis, other filled milk products allowed to be sold, inasmuch as such products and Milnot are essentially the same product. That being the case, the conduct on the part of defendants in this case in barring the sale of Milnot in this state violates plaintiff's rights secured by the Equal Protection Clause of the Fourteenth Amendment.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the persons of the plaintiff and defendants and over the subject matter of this action, pursuant to 28 U.S.C. § 1331, and the Fourteenth Amendment to the United States Constitution.

2. Under the facts and circumstances of this case, plaintiff is being denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

3. Plaintiff is entitled to an injunction prohibiting defendants from embargoing or otherwise restricting Milnot Dairy Vegetable Blend for sale in West Virginia.

---

**3.** The provisions in that Act are not meaningfully different from those in W.Va.Code, 19–11–2.