Dear Chairman James C. Thomas,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following question:
Is the Oklahoma State Employee Charitable Contribution Act of1989 ( 74 O.S. 7002-74 O.S. 7010 (1989)), which may operate to permit only a very small number of organizations to qualify to manage and conduct the solicitation of state employee payroll deductions for employee charitable contributions, invalid because it violates provisions of the Oklahoma or United States Constitutions?
 I. Structure and Operation of the Oklahoma State Employee Charitable Contribution Act of 1989
¶ 1 On May 1, 1989, a new law, the Oklahoma State Employee Charitable Contribution Act of 1989 (the Act) took effect and was ordered codified at 74 O.S. 7001-74 O.S. 7010 (1989). The purpose of the Act is to permit employees of the State of Oklahoma an opportunity to make charitable contributions through payroll deduction. 74 O.S. 7002 (1989). To accomplish this objective, the Act creates an administrative body, the State Agency Review Committee (the Committee). 74 O.S. 7005 (1989).
¶ 2 The Act contemplates that only certain organizations, meeting specified qualifications, will qualify to solicit and receive state employee contributions through payroll deduction. The Committee is charged to establish and publicize an application process, to certify qualified organizations which make application, and to hear appeals of rejected organizations.74 O.S. 7005(B)(1-8) (1989). The Act also sets up an intermediate level of administration through the creation of local state agency review committees to administer and oversee the operations of certified organizations within specific geographic areas of the State. 74 O.S. 7006 (1989).
¶ 3 The Act permits certification of a single organization as the "principal combined fund raising organization," qualified to conduct and manage each local charitable contribution campaign within each specified geographic area. 74 O.S. 7003(7) (1989). To qualify, this organization must meet numerous specific statutory criteria:
 1. The organization must be a legally constituted grouping of at least five health and social service agencies bound together to raise and distribute charitable contributions. 74 O.S. 7003(1) and 74 O.S. 7007(A) (1989);
 2. The organization's constituent agencies must provide or support direct health and welfare services to persons within the geographic area, the services must directly benefit human beings and must consist of (a) care, research or education in the fields of human health or social adjustment and rehabilitation, (b) relief for victims of natural disasters or other emergencies, or (c) assistance to persons impoverished and in need of food, shelter, clothing and basic human welfare services. 74 O.S. 7009(A) (1989);
 3. The constituent agencies must be nonprofit, tax exempt charities subject to 501(c) of the Internal Revenue Code, must be incorporated or authorized to do business in Oklahoma as private, nonprofit organizations, must secure an annual fund raising license from the Oklahoma Tax Commission, must file an annual Income Tax form 990, must obtain and submit audits, and must be governed by a board of directors who reside in the geographic area served, serve without compensation, and include representative consumers of the services provided by the agency. 74 O.S. 7009(c)(1-4), 74 O.S. 7010(A)(1-4) (1989);
 4. A "substantial portion" of each constituent agency's annual budget must be derived from public solicitations within the geographic area. 74 O.S. 7010(A)(5) (1989); and
 5. The organization must meet certain publicity, recruitment and training, staffing, records keeping, accounting and disbursement requirements. 74 O.S. 7007(B), 74 O.S. 7007(C), and 74 O.S. 7007(F) (1989).
¶ 4 The Act also excludes certain activities from consideration in the Committee's determination of whether a given local agency within an applicant federation provides basic human welfare services to the impoverished. These activities include support of higher education, engaging in litigation activities on behalf of other parties, lobbying and religious activities.
¶ 5 Within each geographic area, the local state agency review committee examines the applications of all such local federations of agencies and determines whether the federations and their constituent agencies meet the local presence tests within the geographic area, as described above. This review is limited to federations otherwise approved for the geographic area by the State Agency Review Committee. 74 O.S. 7005(B)(2) (1989). The local committee then selects, from all the qualified federations, as the principal combined fund raising organization, that federation providing the greatest financial support for charitable agencies in that geographic area. 74 O.S. 7007(A) (1989). Other qualified federations within the geographic area may then participate in the single campaign conducted and managed by the principal combined fund raising organization. 74 O.S.7007(B)(5) (1989).
¶ 6 In sum, the Act establishes that any local charitable agency may benefit from the single state employee solicitation campaign conducted within the geographic area where it provides qualified services, if it will band together for such purposes with at least four other such agencies. The "federation" thus formed, will then participate in the single combined campaign, but if multiple such federations exist within a given geographic area, only one of them will be given overall responsibility for conducting and managing the campaign.
 II. Constitutionality of the Act
¶ 7 Your question regarding the constitutionality of the described statutory program appears to be focused upon the likelihood that some local agencies, or federations of local agencies, may fail to qualify for participation in the single state employee payroll deduction campaign. Some qualified federations may not qualify to conduct and manage such a campaign, and may be compelled to participate, if at all, in a campaign conducted by another qualified federation. In other words, within each geographic area, only a single voice will be permitted to directly solicit contributions from state employees, and all others desiring to benefit from employee payroll deductions will be forced to speak through that single voice.
 A. The Rational Relationship Test
¶ 8 In your letter requesting this opinion you express concern that the Act may conflict with Oklahoma Constitution, Article V, Section 59, or the Equal Protection Clause of the United States Constitution. The Oklahoma Constitution does not expressly single out "equal protection" but Article V, Section 59, has been interpreted, in effect, as a kind of equal protection clause. This section provides that:
 Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.
¶ 9 Distinctions between the effect of federal and state constitutional treatment of equal protection are academic, because the Oklahoma Supreme Court, in Texas Oklahoma Exp. v.Sorenson, 652 P.2d 285 (Okla. 1982), has ruled that:
 In testing the validity of a state statute which differentiates in its treatment of one group of individuals compared with its treatment of another group as against the constitutional prohibition against taking property without due process of law, against denial of equal protection of the laws, and against the enactment of special as distinguished from general laws, a common test is applied, i.e., whether the classification which forms the basis for the differentiation is neither arbitrary nor capricious, and bears a reasonable relation to the object to be accomplished.
652 P.2d at 289-290.
¶ 10 This test requires that a statute be presumed constitutional, and places a heavy burden on anyone who would challenge such a law to demonstrate the absence of any sensible relationship between the statute and any conceivable legitimate state purpose. Thayer v. Phillips Petroleum Co., 613 P.2d 1041,1044 (Okla. 1980).
¶ 11 The conceivable legitimate state purposes served by the Act here in question are readily evident, and are sufficient to sustain the Act in the face of an ordinary equal protection challenge. The State has a clear interest in limiting the number of on-the-job charitable appeals to which state employees are subjected. These appeals interfere, to some extent, with the employees' performance of their ordinary duties. The State also has an interest in limiting the number of payroll deductions for which the State Treasurer and the Office of State Finance will be responsible. Each such deduction inevitably imposes some administrative expense upon the taxpayers.
¶ 12 Other State interests include a legitimate desire to insure that state employee contributions are distributed and used to benefit the most needy, and that funds raised locally benefit that locality. Considering these interests, in light of the necessary presumption of constitutionality, it cannot be said that the Act's provisions of selection and qualification of fund raising organizations are essentially arbitrary and clearly unreasonable under the "rational relationship" test. Ibid.,613 P.2d at 1044.
 B. Strict Scrutiny
¶ 13 In some cases, however, a statute may be stripped of its presumption of constitutionality, and the State may be compelled to prove that the statute serves a compelling state interest, which cannot be adequately served by less restrictive alternatives. This more stringent standard of constitutional review is applied where a statute creates a suspect classification or impinges upon fundamentally protected constitutional rights.
¶ 14 A statute may be said to be based upon a "suspect classification" when it is designed to include or exclude, for special treatment, "discrete and insular minorities" identified by race, religion, national origin, or similar characteristics.See, United States v. Carolene Products, 304 U.S. 144, 152, n. 4, 58 S.Ct. 778, 82 L.Ed.2d 1234 (1938). In the Act here in question, there is a complete absence of any suggestion that it operates, or was intended to operate, in reference to racial, religious, ethnic or any other suspect considerations. The Act is, in fact, content neutral. Consequently, these factors provide no basis for heightened constitutional scrutiny of the Act. See,also, Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307,96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).
¶ 15 Considering the foregoing, the only question remaining for analysis is whether the Act here in question is subject to strict constitutional scrutiny because it infringes upon "fundamental rights and interests." This is a genuine issue, because expressional and associational freedoms protected by theFirst Amendment of the United States Constitution are considered to be such "fundamental rights." See, e.g., Police Dept. of Chicago v.Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). The Supreme Court has recognized that charitable "solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues."Village of Schaumberg v. Citizens for a Better Environment,444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). The Act under consideration implicates these First Amendment concerns because some organizations will be permitted to contact and deliver their charitable solicitation message directly to state employees, while others will not be permitted to do so.
¶ 16 However, this factor, alone, does not indicate that the Act must necessarily be subjected to strict constitutional scrutiny. This point is illustrated by the decision of the court in National Black United Fund, Inc. v. Devine, 667 F.2d 173
(D.C. Cir. 1981). The case involved a challenge to provisions of an Executive Order by the President of the United States, establishing a single charitable fund drive among federal employees (Combined Federal Campaign or CFC), pursuant to which payroll deductions could be authorized. The National Black United Fund (NBUF) filed suit in United States District Court alleging that CFC rules prevented NBUF from directly soliciting charitable contributions through payroll deductions, and instead compelled it to associate with other qualified organizations which would conduct and manage such campaigns on behalf of NBUF and other recipient organizations. The District Court granted summary judgment to NBUF. National Black United Fund, Inc. v. Campbell,
494 F.Supp.748 (D.C. 1980).
¶ 17 However, the Circuit Court of Appeals reversed, holding that application of strict constitutional scrutiny in this context first requires the challenger to adduce evidence that the regulations in question substantially impair its ability to convey a message to a desired audience. National Black UnitedFund, Inc. v. Devine, 667 F.2d at 179. Thus, an organization claiming First Amendment protection could not overcome the presumption of constitutionality or shift to the government the burden of justifying the law, unless it could prove the manner in which its activities would be harmed by its forced association with other organizations for fund solicitation purposes. Ibid.,667 F.2d at 180.
¶ 18 The fact based inquiry necessary in order to overcome the presumption of constitutionality inherent in the Oklahoma State Employee Charitable Contribution Act is beyond the scope of an official opinion of the Attorney General. It can be said, however, that absent such a showing, this legislation retains its presumption of constitutionality, and must be deemed to be constitutional.
¶ 19 It is, therefore, the official opinion of the AttorneyGeneral that the Oklahoma State Employee Charitable ContributionAct of 1989 (74 O.S. 7001-74 O.S. 7010 (1989)), which mayoperate to permit only a very small number of organizations toqualify to conduct and manage the solicitation of State employeepayroll deductions for employee charitable contributions, is notinvalid on its face and does not violate provisions of theOklahoma or United States Constitutions. However, the inquirynecessary to overcome the presumed constitutionality of the actis a factual determination beyond the scope of an opinion of theAttorney General.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
JAMES B. FRANKS ASSISTANT ATTORNEY GENERAL
SUE WYCOFF ASSISTANT ATTORNEY GENERAL