Gants, J.
The plaintiffs, legal immigrants who have been denied cash assistance benefits from the Commonwealth of Massachusetts because they have resided in the Commonwealth for less than six months, have moved for reconsideration of this Court’s Memorandum of Decision and Order dated January 25, 2001 (“the Decision”) (12 Mass. L. Rptr. 697) allowing partial summary judgment on behalf of the defendant Commissioner. For the reasons detailed below, the plaintiffs’ request for reconsideration is DENIED.
The plaintiffs challenge this Court’s legal conclusion that, “(w]hen a state law benignly benefits only aliens and does not in any way put citizens in a superior position to similarly situated aliens, then this Court believes that it should be examined through the rational basis test rather than strict scrutiny.” Decision at 703. This Court acknowledges that this conclusion, for two reasons, is generally not appropriate in equal protection jurisprudence. First, simply because legislation may appear benign or may even be intended to be benign towards a suspect class does not make it truly benign. Rather, what is meant to be benign may simply reflect outdated stereotypes that ultimately unfairly burden the suspect class. See, e.g., Frontiero v. Richardson, 411 U.S. 677, 684-85 (1973) (discrimination “rationalized by an attitude of‘romantic paternalism’... in practical effect, put women, not on a pedestal, but in a cage”); Richmond v. Croson Co., 488 U.S. 469, 493 (1989) (“Absent searching judicial inquiry into the justification for such race-based measures, there is simply no way of determining what classifications are ‘benign’ or ‘remedial’ and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial polities”). Second, legislation that discriminates on the basis of race or gender for the benign purpose of helping black African-Americans or women generally disadvantages white European-Americans and men if it reduces the number of jobs, contracts, or educational opportunities available to them, or makes it more difficult for them to obtain these jobs or contracts or to be admitted to these schools. Therefore, discrimination in favor of black African-Americans or women inherently means reverse discrimination against all those who do not fit within these classifications. See, e.g., Richmond v. Croson Co., 488 U.S. at 494 (“the standard of review under the Equal Protection Clause is not dependent on the race of those burdened or benefited by a particular classification”); Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995). Third, the Supreme Court has found classifications by race so fraught with dangers that it has generally prohibited such classifications except as a remedy for past discrimination. See, e.g., Richmond v. Croson Co., 488 U.S. at 493-500.
The case at bar poses the unusual, perhaps unique, situation of legislative action that is undoubtedly benign in its purpose and intent, and that does not give an advantage to aliens that is denied to non-aliens. When in August 1996, the United States Congress enacted and the President signed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (“the 1996 Act”), Pub. L. No. 104-193 (August 22, 1996), 8 U.S.C. §1611 etseq., qualified aliens who had not resided in the United States for at least five years were not eligible “for any Federal means-tested public benefit,” including the program of Federal block grants to states for temporary assistance for needy families under Part A of Title IV of the Social Security Act, 42 U.S.C. §601 et seq., known as Temporary Assistance for Needy Families (“TANF”). 8 U.S.C. §§1613(a) and 1612 (b)(3)(A). Since in 1996, Massachusetts had only one cash assistance program for needy families — the Transitional Aid to Families with Dependent Children program (“the TAFDC program”) — which was funded with Federal block grants and state monies, the Massachusetts Legislature understood that it effectively had two alternatives:
It could do nothing, which would mean that qualified aliens who did not meet this five-year residency requirement would be barred from the TAFDC pro *732 gram, thereby essentially denying them all cash assistance; or
It could create a second cash assistance program— the Supplemental Transitional Aid to Needy Families (“the Supplemental program") — for the sole purpose of providing cash assistance benefits to needy qualified aliens and their families who had been in the United States less than five years and therefore were barred from receiving benefits under the TAFDC program.
Massachusetts chose the second alternative. St. 1997, c. 43, §210. Given these alternatives, it is plain that the Massachusetts Legislature chose the more benign alternative for qualified aliens, and that citizens were in no way disadvantaged because the Legislature chose this course.
Since the new legislation did not advance the interests of citizens over aliens (because citizens do not receive a penny of the Supplemental funds appropriated), since it was benignly intended to provide cash assistance to qualified aliens who would otherwise be barred from the TAFDC program because of its receipt of federal funds, and since it did not disadvantage citizens in favor of aliens, this Court concluded that the heightened judicial solicitude of strict scrutiny was not required.
The primary thrust of the plaintiffs’ motion for reconsideration is that the Massachusetts Legislature, in fact, had a third alternative: it could, through careful accounting, have separated the federal and state monies in the TAFDC program, and paid only state monies to those who did not meet the five-year residency requirement and therefore were barred from receiving federal funds. If Massachusetts had pursued this alternative, then there would be no six-month residency requirement for qualified aliens because there is no state durational residency requirement for TAFDC eligibility.
There are two problems with this argument (three if one adds that it was never argued until this motion for reconsideration). First, there is nothing in the summary judgment record to indicate that this alternative was considered as a viable option when the Massachusetts Legislature was contemplating what to do in response to passage of the 1996 Act. Indeed, if anything, that record makes it clear that the Legislature viewed the Supplemental program as the only pragmatic alternative to the denial of all cash assistance to those qualified aliens who failed to meet the durational residency requirement.
Second, since this alternative was not considered, all that this argument truly says is that Massachusetts, if it wished, could have devised another way to continue cash assistance to qualified aliens that would not have included a six-month state residency requirement. The Court in its Decision had recognized that the Massachusetts Legislature could have enacted a Supplemental program that did not include any state residency requirement. The plaintiffs now point out that Massachusetts, through careful administrative and accounting steps and at great risk of a hostile federal audit, could also have avoided a state residency requirement by continuing cash assistance using only state funds within the TAFDC program. The mere fact that the Legislature could have treated a non-racial, non-gender suspect class more benignly than it did, however, is not enough to require strict scrutiny. The fact remains (and plaintiffs do not dispute) that Massachusetts lawfully could have done nothing for these qualified aliens and chose to do so, not because of any legal obligation, but solely because it wished to help qualified aliens in need who had been forsaken by the federal government.
In short, when, as here:
the Commonwealth’s failure to act would have meant that qualified aliens who had been in the United States less than five years would have been barred from all TAFDC benefits;
the Massachusetts Legislature, without any legal obligation, chose to act to provide cash assistance to this category of aliens;
the Supplemental program the Legislature created benefitted only those qualified aliens who had been denied federal benefits;
no citizen was disadvantaged by the Legislature’s action; and
the legislation involved no classification based on race, gender, national origin, or religion,
there is no reason to distrust the democratic process and apply to such legislative action the heightened judicial solicitude of strict scrutiny. The Equal Protection guarantees of both the United States and Massachusetts Constitutions are satisfied in such circumstances by evaluating such legislation under the rational basis test.
ORDER
For the reasons stated above, the plaintiffs’ request for reconsideration is DENIED.